# In the
# United States Court of Appeals
## for the Seventh Circuit

LUZMARIA ARROYO,

*Plaintiff-Appellant,*

v.

VOLVO GROUP NORTH AMERICA, LLC,
doing business as Volvo Parts North America,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:12-cv-06859.
The Honorable **Robert M. Dow, Jr.**, Judge Presiding.

## BRIEF OF DEFENDANT-APPELLEE

FALON M. WRIGLEY
WILLIAM J. MCMAHON, IV
CONSTAGNY, BROOKS, SMITH
  & PROPHETE, LLP
7733 Forsyth Boulevard
Suite 1325
St. Louis, Missouri 63105
(314) 338-3740

*Attorneys for Defendant-Appellee*
*Volvo Group North America, LLC*
*Doing business as Volvo Parts North America*



## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 14-3618

Short Caption: LuzMaria Arroyo v. Volvo Group North America, LLC

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[   ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Volvo Group North America, LLC, d/b/a Volvo Parts North America

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Constangy, Brooks & Smith, LLP

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

   See attached.

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

   See 3(i), above.

Attorney's Signature: s/ Falon M. Wrigley          Date: 12/17/2014

Attorney's Printed Name: Falon M. Wrigley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes  X     No _____

Address: 7733 Forsyth Blvd., Suite 1325, St. Louis, MO 63105

Phone Number: 314-925-7273          Fax Number: 314-727-1978

E-Mail Address: fwrigley@constangy.com

rev. 01/08 AK

3 (i)  Identify all parent corporations, if any:

      Volvo Group North America, LLC is a wholly owned subsidiary of Mack Trucks, Inc., which in turn is a wholly owned subsidiary of VNA Holding Inc., which in turn is a wholly owned subsidiary of A.B. Volvo, which is publicly traded.

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 14-3618

Short Caption: LuzMaria Arroyo v. Volvo Group North America, LLC

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[   ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Volvo Group North America, LLC, d/b/a Volvo Parts North America

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Constangy, Brooks & Smith, LLP

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

   See attached.

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

   See 3(i), above.

Attorney's Signature: s/ William J. McMahon, IV          Date: 12/17/2014

Attorney's Printed Name: William J. McMahon, IV

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No  ✕

Address: 100 N. Cherry St., Suite 300, Winston-Salem, NC 27101

Phone Number: 336-721-6860          Fax Number: 336-748-9112

E-Mail Address: bmcmahon@constangy.com

rev. 01/08 AK

3 (i)   Identify all parent corporations, if any:

      Volvo Group North America, LLC is a wholly owned subsidiary of Mack Trucks, Inc., which in turn is a wholly owned subsidiary of VNA Holding Inc., which in turn is a wholly owned subsidiary of A.B. Volvo, which is publicly traded.

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS.................................................. i

TABLE OF AUTHORITIES .......................................................................... x

JURISDICTIONAL STATEMENT ................................................................... 1

COUNTER STATEMENT OF THE ISSUES ........................................................ 2

COUNTER STATEMENT OF THE CASE .......................................................... 3

I.     Procedural History ........................................................................... 3

II.    Facts ................................................................................................ 4

       A.     Volvo Hires Arroyo in 2005 Knowing She is a U.S. Army Reservist ..... 4

       B.     Arroyo Granted Over 900 Days of Military Leave; Not Terminated
              in Connection with 2009 Reduction in Force; Nominated Her
              Supervisors for Patriotic Employer Awards........................................... 4

       C.     In Addition to Granting Over 900 Days of Military Leave,
              Arroyo's Work Schedule Modified Throughout Her Employment
              to Accommodate Military Drill Weekends ............................................. 5

       D.     Over the Course of Her Employment, Volvo Management Discussed
              Arroyo's Military Leave, and Volvo's Need to Hold Her Accountable
              to Company Policies – in Spite of, Not Because of, Her Military
              Status; Arroyo Never Disciplined for Taking or
              Requesting Military Leave...................................................................... 6

       E.     Volvo's Distribution Center Administered and Enforced an Objective
              Attendance Policy that Was Applicable to All Employees...................... 7

       F.     Volvo's Distribution Center's Local Attendance Policy Underwent
              Revisions in 2008 and 2009 ................................................................. 8

       G.     Arroyo Violates the Attendance Policy Throughout
              Her Employment .................................................................................. 9

H.      On October 29, 2010, Arroyo Receives a Verbal Warning
for Violations of the Local Attendance Policy; Though Arroyo
Further Violated the Policy in October 2010, Schroeder Made
a Special Exception for Her ..................................................... 10

I.       Beginning in December 2010, Arroyo Treated for PTSD; Arroyo
Takes FMLA and STD Leave From December 23, 2010
to March 23,2011 ..................................................................... 11

J.       In April 2011, Arroyo Sent for an IME and Subsequently Removed
from All Safety Sensitive Work After Stating in a Report that She
"Zoned Out" While Fulfilling Her Duties as Forklift Driver ............... 11

K.     Arroyo Granted Leave to Attend PTSD Therapy Appointments
from April through July 2011 .................................................. 12

L.      On May 20, 2011, Arroyo Claims She Feels Discriminated Against
Under the ADA After Volvo Does Not Approve Her for Weekend
Overtime on the Basis that the Overtime Work Requires Operation
of a Forklift in Violation of Her Active Medical Restrictions; Arroyo
Continues Working Weekday Overtime ................................... 13

M.    Arroyo Granted Military Leave From May 31 to July 8, 2011;
Arroyo Worked Weekend Overtime After Being Released
to Full-Duty .......................................................................... 14

N.     Arroyo Granted Leave For a Second Set of PTSD Therapy
Appointments from July Through October 2011; Though She Was
Late to Work by Between Four and 85 Minutes on 11 Separate
Occasions Following Therapy – She Received No Occurrences
or Discipline ......................................................................... 14

O.     Arroyo Receives Additional Occurrences in July and August 2011
for Tardies Unrelated to Her PTSD Therapy Appointments
or Military Leave ................................................................... 15

P.      On August 24 and 25, 2011, Schroeder Counsels Arroyo on
Volvo's Violence and Harassment Policies, Providing Her Copies
of Same, After She Made Threats of Physical Violence Against a
Co-Worker, Referring to Her as "The Enemy" and "Her Target";
In Response, Arroyo Claims Schroeder is Discriminating Against
and Harassing Her and Requests Accommodations in an August 26,
2011 Email to Williams ......................................................... 15

Q.      Arroyo Receives a Formal Written Warning and Three-Day
        Suspension for Numerous Violations of the Local Attendance
        Policy on August 31, 2011 ....................................................... 17

R.      On September 1, 2011, Volvo Grants Arroyo Her Requested
        Accommodation of a Meditation Space and Arroyo Requests
        at Least 12 Additional Accommodations, Which Volvo Takes
        Under Review ........................................................................... 17

S.      In September 2011, Arroyo Requests an Investigation of Schroeder
        for Alleged Disability-Based Harassment and Files an EEOC Charge
        Claiming Disability Discrimination and Retaliation ............................ 18

T.      Also in September, Volvo Follows Up With Arroyo Regarding Her
        Accommodation Requests, Granting at Least Six and Confirming
        Those Still Under Review ......................................................... 19

U.      Also in September 2011, Williams Tries to Investigate Arroyo's
        Harassment Claim but; Arroyo Repeatedly Refuses to Cooperate
        in the Investigation ............................................................... 20

V.      Arroyo Sent Home From Work on September 21, 2011
        After Refusing to Remove Headphones, a Safety Risk and
        Violation of Policy ................................................................ 21

W.      On September September 22, 2011, Volvo Engages in Discussion
        with Arroyo Regarding Her Request to Wear Ear Plugs, Suggesting
        She Provide Medical Document and/or Undergo an IME and
        Offering Paid Time Off For That Purpose; In Response, Arroyo
        Claims the Request for Information Constitutes Harassment; Arroyo
        Still Refuses to Cooperate in Any Harassment Investigation .............. 21

X.      On October 10, 2011, Arroyo Received Another Occurrence
        Under the Attendance Policy .................................................... 23

Y.      Also in October 2011, Volvo Grants Arroyo's Request for Leave to
        Attend a Third Series of PTSD Therapy Appointments ..................... 23

Z.      In October 2011, Arroyo Repeatedly Abuses Volvo's
        Meditation Room Accommodation ............................................. 23

AA.     Due to Arroyo's Continued and Cumulative Violations of the
        Attendance Policy, Volvo is Forced to Terminate Her ..................... 25

SUMMARY OF THE ARGUMENT ............................................................... 26

ARGUMENT .......................................................................................... 27

    A.    Standard of Review ................................................................ 27

    B.    Arroyo Fails to Assert an Articulable Basis for Disturbing
            Summary Judgment and Fails to Clarify the Precise Relief
            Sought Such That Her Appeal Should be Dismissed........................... 28

    C.    Arroyo Also Waives Arguments and/or Facts on Appeal to
            The Extent They Were Not Raised in the District Court Below ......... 29

    D.    The District Properly Granted Summary Judgment as
            To Each of Arroyo's Claims and Summary Judgment
            Should be Affirmed................................................................... 32

        i.    Summary Judgment Was Appropriate as Arroyo's Claims
                  are Not Supported by Facts, but Her Perceptions
                  and Feelings................................................................ 32

        ii.    The District Court Properly Granted Summary Judgment
                  as to Each of Arroyo's Discrimination Claims and Summary
                  Judgment Should be Affirmed .................................... 34

                a.    Under the ADA ................................................. 34

                      1.    Arroyo's Discrimination Claim fails Via Both the
                            Direct and Indirect Methods.................................. 34

                            A.    The Direct Method....................................... 35

                            B.    The Indirect Method.................................... 36

                                  i.    Arroyo Neither a Qualified Individual
                                          With a Disability Nor Meeting
                                          Volvo's Legitimate Expectations ...... 37

                                ii.    Similarly-Situated Employees
                                          Treated the Same............................. 37

                                iii.    Arroyo Cannot Establish Pretext..... 39

       b.      Under USERRA ................................................ 42

iii.    The District Court Properly Granted Summary Judgment as to Each of Arroyo's Retaliation Claims; Summary Judgment Should be Affirmed ................................................ 45

         A.     USERRA Retaliation ................................. 45

         B.     ADA Retaliation ......................................... 46

iv.    The District Court Properly Granted Summary Judgment as to Arroyo's Failure to Accommodate Claim and Summary Judgment Should be Affirmed ................................................ 49

v.    The District Court Properly Granted Summary Judgment as to Arroyo's Intentional Infliction of Emotional Distress Claim and Summary Judgment Should be Affirmed ................. 52

STATEMENT CONCERNING ORAL ARGUMENT ................................. 54

CONCLUSION ................................................................................ 54

# TABLE OF AUTHORITIES

*Alexander v. CIT Tech. Fin. Servs., Inc.,*
217 F. Supp. 2d 867 (N.D. Ill. 2002)........................................................................ 39

*Anderson v. Hardman,*
241 F.3d 544 (7th Cir.2001)..................................................................................... 28

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).................................................................................................. 27

*Balark v. Ethicon, Inc.,*
575 F.Supp. 1227 (N.D. Ill. 1983)........................................................................... 53

*Beck v. Univ. of Wisconsin Bd. of Regents,*
75 F.3d 1130 (7th Cir. 1996).................................................................................... 51

*Breneisen v. Motorola, Inc.,*
512 F.3d 972 (7th Cir. 2008)............................................................................... 36, 43

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).................................................................................................. 27

*Contreras v. Suncast Corp.,*
237 F.3d 756 (7th Cir. 2001).................................................................................... 37

*Crews v. City of Mt. Vernon,*
567 F.3d 860 (7th Cir. 2009).................................................................................... 42

*Davis v. Carter,*
452 F.3d 686 (7th Cir. 2006).................................................................................... 35

*Durkin v. City of Chicago,*
341 F.3d 606 (7th Cir. 2003).................................................................................... 27

*Earl v. Mervyns, Inc.,*
207 F.3d 1361 (11th Cir. 2000)................................................................................ 50

*EEOC v. Yellow Freight System, Inc.,*
253 F.3d 943 (7th Cir. 2001).................................................................................... 47

*Emmel v. Coca–Cola Bottling Co. of Chicago,*
95 F.3d 627 (7th Cir. 1996)...................................................................................... 39

*Fleishman v. Cont'l Cas. Co.*,
   698 F.3d 598 (7th Cir. 2012).....................................................34

*Gordon v. United Airlines, Inc.*,
   246 F.3d 878 (7th Cir. 2001).....................................................39

*Graham v. Commonwealth Edison Co.*,
   318 Ill.App.3d 736, 252 Ill.Dec. 320,
   742 N.E.2d 858 (Ill.App.Ct. 1st Dist. 2000) ............................52

*Hall v. Bodine Elec. Co.*,
   276 F.3d 345 (7th Cir. 2002).....................................................47

*Hedberg v. Indiana Bell Tel. Co.*,
   47 F.3d 928 (7th Cir. 1995).......................................................33

*Landfair v. J.B. Hunt Transport, Inc.*,
   2008 WL 538674 (7th Cir. 2008) ...........................................29

*McCoy v. Maytag Corp.*,
   495 F.3d 515 (7th Cir. 2007).....................................................30

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...................................................................34

*Middleton v. City of Chicago*,
   578 F.3d 655 (7th Cir. 2009).....................................................43

*Modrowski v. Pigatto*,
   712 F.3d 1166 (7th Cir. 2013)...................................................35

*NLRB v. Transportation Management Corp.*,
   462 U.S. 393 (1983) ..................................................................42

*Nguyen v. Illinois Dept. of Central Management Services*,
   2003 WL 1796008 (7th Cir. 2003) .........................................29

*O'Neal v. Chicago*,
   392 F.3d 909 (7th Cir. 2004).....................................................27

*Patterson v. Indiana Newspapers, Inc.*,
   589 F.3d 357 (7th Cir. 2009).....................................................30

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000) ........................................................................ 39

*Scott v. Kaneland Community Unit School District # 302,*
    898 F. Supp.2d 1001 (N.D. Ill. 2012) ....................................... 34

*Sere v. Board of Trustees of the Univ. of Ill.,*
    852 F.2d 285 (7th Cir.1988) ...................................................... 30

*Shamim v. Siemens Industry, Inc.,*
    854 F.Supp.2d 496 (N.D.Ill. 2012) .......................................... 52

*Spring v. Sheboygan Area School Dist.,*
    865 F.2d 883 (7th Cir. 1989) ..................................................... 27

*Soileau v. Guilford of Maine, Inc.,*
    105 F.3d 12 (1st Cir. 1997) ........................................................ 47

*Stevens v. Ill. Dep't of Transp.,*
    210 F.3d 732 (7th Cir. 2000) ..................................................... 34

*Stoecklein v. Illinois Tool Works, Inc.,*
    589 F.Supp. 139 (N.D.Ill. 1984) ............................................... 52

*Talanda v. KFC Nat'l Management Co.,*
    140 F.3d 1090 (7th Cir. 1998) ................................................... 46

*Timmons v. Gen. Motors Corp.,*
    469 F.3d 1122 (7th Cir. 2006) ............................................ 34, 36

*Townsend v. Alexian Bros. Med. Ctr.,*
    589 F. App'x 338 (7th Cir. 2015) .............................................. 29

*Uhl v. Zalk Josephs Fabricators, Inc.,*
    121 F.3d 1133 (7th Cir. 1997) ................................................... 33

*Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.,*
    473 F.3d 11 (1st Cir. 2007) ........................................................ 42

*Voelker v. Porsche Cars North America, Inc.,*
    353 F.3d 516 (7th Cir. 2003) ..................................................... 28

*Waggoner v. Olin Corporation,*
    169 F.3d 481 (7th Cir. 1999) ............................................... 37, 49

*Welsh v. Commonwealth Edison Co.*,
  306 Ill.App.3d 148, 239 Ill.Dec. 148,
  713 N.E.2d 679 (Ill.App.Ct. 1st Dist.1999) ............................ 52

*Winsley v. Cook Cnty.*,
  563 F.3d 598 (7th Cir. 2009) ...................................................... 34

*Witkowski v. St. Anne's Hosp. of Chicago, Inc.*,
  113 Ill.App.3d 745, 69 Ill.Dec. 581,
  447 N.E.2d 1016 (Ill.App.Ct. 1983) ........................................ 53

## Rules, Statutes and Other Authorities

28 U.S.C. § 1331 ................................................................................ 1

28 U.S.C. § 1367 ................................................................................ 1

28 U.S.C. § 1391(b) .......................................................................... 1

28 U.S.C. § 1658(a) .......................................................................... 6

29 U.S.C.A. § 215(a)(3) .................................................................... 1

29 U.S.C.A. §§ 791 *et seq.* ............................................................ 1

29 U.S.C. § 794(d) ............................................................................ 34

28 U.S.C. § 1658(a) .......................................................................... 43

29 U.S.C.A. § 2615(a)(1) .................................................................. 1

38 U.S.C.A. §§ 4301 *et seq.*, .......................................................... 1

38 U.S.C. § 4311(b) .......................................................................... 46

38 U.S.C. § 4311(c) .......................................................................... 46

42 U.S.C.A. §§ 2000e *et seq.*, ........................................................ 1

42 U.S.C.A. §§ 12101 *et seq.* ........................................................ 1

42 U.S.C. § 12112(a) ........................................................................ 34

Fed. R. Civ. P. 56(c) ........................................................................ 27

Federal Rules of Appellate Procedure 28(a)(8)(A) ........................................... 2, 28, 54

Federal Rules of Appellate Procedure 28(a)(9) ............................................... 2, 28, 54

Rule 4 of the Federal Rules of Appellate Procedure .................................................... 2

## Jurisdictional Statement

Arroyo's Jurisdictional Statement is incorrect and incomplete.

Jurisdiction was proper in the District Court pursuant to 28 U.S.C. § 1331 as to each of Arroyo's claims that arose under the laws of the United States. Specifically, Arroyo sought redress for alleged violations of the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C.A. § 4301 *et seq.*, 29 U.S.C.A. § 215(a)(3), the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C.A. § 791 *et. seq.*, and the Americans with Disabilities Act (ADA) of 1990, § 2 *et seq.*, 42 U.S.C.A. § 12101 *et seq.*[1]

The District Court had supplemental jurisdiction over Arroyo's one remaining claim, a state law claim for intentional infliction of emotional distress, pursuant to 28 U.S.C. § 1367. This claim stems from Arroyo's federal statutory claims and is so related to them that they form the same case or controversy.

Venue was proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Arroyo's claims occurred in that District.

---

[1] Though Arroyo made reference to Title VII of the Civil Rights Act of 1964 , 42 U.S.C.A. §§ 2000e *et seq.*, as amended, and the Family Medical Leave Act , 29 U.S.C.A. § 2615(a)(1), in her Third Amended Complaint and cites these statute in her jurisdictional statement, she failed to set forth  claims for relief. Further, the District Court granted summary judgment as to both claims on this basis, and as Arroyo failed to raise them at summary judgment. Arroyo also fails to articulate any argument in support of these claims on appeal, as set forth below, and so they are waived and must be dismissed.

This Court has jurisdiction pursuant to Rule 4 of the Federal Rules of Appellate Procedure. The trial court granted Summary Judgment for Defendant-Appellee Volvo Group North America, LLC (hereinafter "Volvo") on September 30, 2014 and dismissed all of claims of Plaintiff-Appellant LuzMaria Arroyo (hereinafter "Arroyo"). Arroyo filed a Rule 59 motion to reconsider on October 10, 2014, which was denied on November 5, 2014. Arroyo filed her Notice of Appeal on December 1, 2014. This appeal is taken from a final judgment and order that disposes of all claims.

## Counter Statement of the Issues

A. Whether Arroyo's Appellant Brief – or any subpart thereof – must be dismissed or is otherwise waived or forfeited due to her failure to set forth any articulable basis for disturbing the District Court's judgment and/or for her failure to comply with Federal Rules of Appellate Procedure 28(a)(8)(A) and/or (a)(9)?

B. Whether Arroyo waived arguments on appeal by (i) raising arguments and presenting facts in her opening brief which she did not raise below and/or (ii) by failing to raise herein the issues/arguments she did raise below?

C. Whether the District Court erred in granting summary judgment as to each of Arroyo's claims?

## Counter Statement of the Case

### I. Procedural History

Arroyo initially filed suit against Volvo on August 27, 2012 in the Northern District of Illinois. (Doc. 1). She filed a Third Amended Complaint ("Complaint") on July 30, 2013, alleging discrimination, retaliation and failure to provide reasonable accommodations under Title VII, the ADA, the Rehab Act, the FMLA, and USERRA, along with a state law claim for intentional infliction of emotional distress ("IIED"). (SA49, ¶ 2).

On September 30, 2014, Volvo filed a motion for summary judgment on all counts of Arroyo's Complaint. (Doc. 75). Arroyo filed a response and Volvo a reply. (Doc. 78, 85). On September 30, 2014, the District Court entered an order and final judgment granting complete summary judgment to Volvo and awarding costs. (SA2-42, 90 and; 91).

On October 10, 2014, Arroyo filed a Rule 59 motion to reconsider, but only as to the District Court's grant of summary judgment.[2] (Doc. 90). Volvo filed a response and the trial court denied Arroyo's motion in its entirety on November 5, 2014. (Doc. 97; SA2-48).

Arroyo filed her Notice of Appeal on December 1, 2014. (SA92-93).

---

[2] Though Arroyo claims in her Appellant Brief that the District Court's taxing of costs should be reversed as impermissible under USERRA, she failed to raise this objection to the District Court – in spite of an order explicitly granting her time to do so. (Doc. 89, 96). Arroyo also failed to challenge the award in her Motion for Reconsideration. (Doc. 90).

**II. Facts**[3]

*A. Volvo Hires Arroyo in 2005 Knowing She is a U.S. Army Reservist*

Arroyo was employed as a material handler for Volvo at its Chicago Parts Distribution Center (the "Distribution Center") in Joliet, Illinois, from June 13, 2005 until she was fired on November 8, 2011. (SA51 and 64, ¶¶11, 13, 111). In Arroyo's employment application, she stated that she was a member of the U.S. Army Reserve, and Volvo hired her with that knowledge. (SA51, ¶¶12, 13). Arroyo interviewed with Keith Schroeder ("Schroeder"), Director of Distribution, and Material Handling Supervisors Michael Temko ("Temko") and Patrick Dunn ("Dunn"). (Doc. 77-2, p. 14 [63:16-24]). As a material handler, Arroyo was responsible for retrieving ordered vehicle parts with a forklift, and then packing those items to ship to the customer on a timely basis. (Doc. 77-2, pp. 3-5 [13:4 to 18:17], 68-71; Doc. 77-5, p. 2, ¶2). As of January 2009, Arroyo worked the second shift from 4:30 p.m. to 12:30 a.m. (Doc. 77-2, pp. 3-5 [83:14 to 85:1]; Doc. 77-5, pp. 3-4, ¶5).

*B. Arroyo Granted Over 900 Days of Military Leave; Not Terminated in Connection with 2009 Reduction in Force; Nominated Her Supervisors for Patriotic Employer Awards*

Throughout her employment, Volvo granted Arroyo leave for military activities, including military drills, training, and Yellow Ribbon events, as well for deployments from April 17, 2006 to May 7, 2007, and April 15, 2009 to August 15, 2010. (SA51 and 54, ¶¶15-16, 33, 39; Doc. 77-5, pp. 16, 2-3, ¶3). In 2009, during

---

[3] Internal citations to the Facts section of the District's Court's September 30, 2014 Memorandum Opinion and Order granting Volvo Summary judgment omitted.

4

Arroyo's second deployment, Volvo terminated six similarly-situated material handlers per a reduction in force. (Doc. 55, p. 7, ¶¶43-44; Doc. 77-5, p. 3, ¶4). Volvo did not terminate Arroyo. (*Id.*; SA55, ¶¶43-44).

In August 2010, upon return from a deployment, Volvo offered Arroyo a voluntary severance package that had been offered to other material handlers. (*Id.*; SA54, ¶¶37-39; Doc. 77-2, p. 18 [86:1 to 88:11]). Arroyo declined the offer. (*Id.*).

Arroyo received more than 900 days of military leave during six and a half years of employment. (SA51 and 54, ¶¶15-16, 33, 39; Doc. 77-5, pp. 16, 2-3, ¶3). After her 2009/2010 deployment, Arroyo nominated Schroeder for a Patriotic Employer Award through the Employer Support of the Guard and Reserve ("ESGR"). (Doc. 77-2, pp. 14-15 [65:20 to 69:2], p. 109). Arroyo and ESGR Ombudsman Colonel Tom Gorski presented the award to Schroeder at the Distribution Center in October 2010. Arroyo also arranged for the public affairs officer from her unit to photograph the event. (*Id.* at pp. 15-16 [69:1 to 72:9]). Arroyo had previously nominated Temko and Dunn for Patriotic Employer Awards after returning from an earlier deployment. (Doc. 77-2, p. 110; Doc. 77-3, p. 3 [108:16 to 109:24]).

### C. In Addition to Granting Over 900 Days of Military Leave, Arroyo's Work Schedule Modified Throughout Her Employment to Accommodate Military Drill Weekends

Volvo also gave Arroyo leave for weekend drills throughout her employment. (Doc. 77-2, pp. 24-26 [14:1 to 122:25]; Doc. 77-5, pp. 3-4, ¶5). Volvo modified Arroyo's work schedule to allow her to arrive to her shift two hours early and leave two hours early on Fridays prior to drill weekends. (*Id.*). Although Arroyo initially

agreed to the schedule, she later claimed the arrangement was unsatisfactory because it did not give her enough time to prepare for drill. (SA58, ¶68; Doc. 77-2, pp. 26-27 [122:13 to 125:17, 131:12 to 133:25], 113-117; Doc. 77-5, pp. 18-22, 3-4, ¶ 5). Through a mediation conducted by Colonel Tom Gorski of ESGR throughout March and April 2011, Volvo accommodated Arroyo's request by changing her Friday schedule to 4:30 to 7:00, and allowed Arroyo to take 5.5 hours of excused military leave. (*Id.*). Through the mediation, Volvo also resolved issues concerning Arroyo's health insurance coverage upon her return to work, catch-up 401(k) contributions, and paid military leave for Yellow Ribbon events. (SA49, ¶68; Doc. 77-2, pp. 113-117; Doc. 77-5, pp. 18-22, 3-4, ¶5,).

>    D. *Over the Course of Her Employment, Volvo Management Discussed Arroyo's Military Leave, and Volvo's Need to Hold Her Accountable to Company Policies – in Spite of, Not Because of, Her Military Status; Arroyo Never Disciplined for Taking or Requesting Military Leave*

Both Schroeder and Arroyo's supervisor, Michael Temko, conversed with human resources and management about how to handle Arroyo's various leave requests, what rights (such as leave, travel, and rest time) were provided under USERRA, and what information Arroyo was required to provide to Volvo prior to or during requested leave time.[4] (Doc. 78-3, p. 27-29, 31, 38-39; Doc. 82-2, pp. 9-10 [28:11 to 33:8]; Doc. 78-2, pp. 2-3). Temko, a former United States Army Reservist,

---

[4] To the extent Arroyo cites communications pre-dating August 27, 2008, they are barred by the federal four year statute of limitations. See *Middleton v. City of Chicago*, 578 F.3d 655, 658 (7th Cir. 2009) (holding that USERRA claims are subject to the federal four-year statute of limitations set forth in 28 U.S.C. § 1658(a)).

kept track of Arroyo's military schedule and her absences.[5] (Doc. 82-2, pp. 30-32

[110:22 to 113:5 and 117:8 to 118:22]; Doc. 82-5, pp. 7-9 [20:24 to 24:3, 26:6 to 27:9]).

Volvo management and human resources exchanged emails throughout Arroyo's

employment discussing the company's rights and obligations in relation to Arroyo's

military leave, and holding Arroyo accountable to company policies in spite of – not

because of – Arroyo's military status. (Doc. 79, p. 2-4, ¶6, 11-13; *See, e.g.*, Doc. 78-3,

pp. 26-36, 38-44 and Doc. 78-4, pp. 1, 6, 8-11, 14-15, 31-32; Doc. 77-2, p. 13 [58:23 to

59:6]; Doc. 77-5, p. 12, ¶40).

It is undisputed that Arroyo received no occurrences under the Local Attendance

Policy for days on which she took military leave.[6] (*Id.*).

### E. Volvo's Distribution Center Administered and Enforced an Objective Attendance Policy that Was Applicable to All Employees

All material handlers at the Distribution Center are subject to Volvo's

attendance policy. (Doc. 77-5, p. 3, ¶6). Per the policy, employees receive

"occurrences"—either whole or fractional— for inexcusable absences or tardiness.

(*Id.*, pp. 23-26). For each occurrence, Volvo looks back both four weeks and six

months from the date of the most recent occurrence to see if an employee has

accrued enough occurrences to warrant a step in the progressive disciplinary

---

[5] Volvo maintains attendance spreadsheets for all of its employees. (SA25-26; 77-5, p. 5, ¶9). Though Arroyo is the only employee for whom a *military* leave spreadsheet was maintained, she was the only Volvo employee with active duty military obligations during the relevant time. (Doc. 82-3, pp. 7-8 [21:3 to 23:21]; Doc. 82-2, pp. 14, 16 [46:7-17 and 54:18-20]).

[6] Similarly, Arroyo never received discipline for failing to provide military orders. (Doc. 77-5, pp. 4-5, 12, ¶¶10, 40; Doc. 77-2, p. 13 [58:23 to 59:6]).

process. (*Id.*). Corrective action will be taken if an employee has two occurrences within a four week period or five occurrences within a six month period, calculated on a rolling fiscal year. (*Id.*). The disciplinary steps under the attendance policy are: verbal warning, formal written warning, three-day suspension, and termination. Depending on how near an employee's occurrences are to one another, an employee may receive more than one disciplinary step at the same time, as the same occurrence can count for purposes of multiple disciplinary steps, given the look-back periods discussed above. (*Id.*). If an employee has a six-month period with no occurrences, the employee's disciplinary "level" is reduced by one step. (*Id.* at pp. 4-5, ¶7).

The attendance policy is administered jointly by Temko and Schroeder. (*Id.* at pp.53, 5, ¶9). Temko is responsible for documenting any occurrences for each employee on an Excel spreadsheet after reviewing the time punch records. (*Id.*). Temko and Schroeder are then responsible for administering disciplinary steps under the policy. (*Id.*).

### F. Volvo's Distribution Center's Local Attendance Policy Underwent Revisions in 2008 and 2009

The attendance policy undergoes periodic revision. (*Id.* at p. 5, ¶8). In January 2008, the unwritten grace period that allowed employees to punch in up to two minutes after the beginning of their shifts was eliminated due to employee abuse. (*Id.*). In January 2009, all absences other than earned time off and scheduled holidays no longer counted towards the rolling time period. (*Id.*). Arroyo was present for and signed for receipt of an "Employee Infosession" in January 2009

concerning these policy changes. (*Id.*, pp. 27-52; Doc. 77-2, pp. 6 [23:15 to 25:15], 72-97).

### G. Arroyo Violates the Attendance Policy Throughout Her Employment

In 2009, Arroyo received a verbal warning for two occurrences as a result of two no call, no shows within a four week period in 2008. (Doc. 77-5, pp. 61-62, 6, ¶11; Doc. 77-6, pp. 5- 6). On October 1, 2010, Arroyo punched in 22 minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the attendance policy.[7] (Doc. 77-2, pp. 64 [298:1 to 299:7], 100, 182; Doc. 77-5, p. 6, ¶12; Doc. 77-6, pp. 3, 7). On October 11, 2010, Arroyo punched in 20 minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the attendance policy. (Doc. 77-2, pp. 64 [299:9 to 300:5], 100, 184; Doc. 77-5, p. 6 ¶13; Doc. 77-6, pp. 3, 9). On October 19, 2010, Arroyo called-in absent for work and earned one (1) occurrence under the attendance policy. (Doc. 77-2, pp. 20 [101:2 to 102:17], 100, 185; Doc. 77-5, p. 6, ¶14; Doc. 77-6, pp. 3, 6).

Following Arroyo's October 19, 2010 absence, Schroeder met with Arroyo and told her the absence would be excused if she provided a doctor's note. (Doc. 77-2, pp. 20-23 [101:2 to 110:12]; Doc. 77-5, p. 5, ¶ 15). However, Arroyo never provided such a note. (*Id.*).

---

[7] A late punch of one hour or less results in a one-half (0.5) occurrence. (Doc. 77-5, p. 6, ¶17).

*H. On October 29, 2010, Arroyo Receives a Verbal Warning for Violations of the*
*Local Attendance Policy; Though Arroyo Further Violated the Policy in*
*October 2010, Schroeder Made a Special Exception for Her*

On October 29, 2010, Schroeder presented Arroyo with a Corrective Action Plan ("CAP") in the form of a verbal warning—the first step in the progressive disciplinary process under the Local Attendance Policy—for the two occurrences she earned within a one-month period from October 1, 2010 to October 19, 2010. (Doc. 77-2, pp. 20 [98:3 to 100:12], 111; Doc. 77-5, pp. 149-150, 7, ¶16, ). On October 29, 2010, Arroyo punched in one minute after the beginning of her shift. (Doc. 77-2, pp. 9-11 [41:4 to 46:14, 96:2 to 97:20], 100, 186; Doc. 77-5, p. 7, ¶17; Doc. 77-6, pp. 3, 11). Because Arroyo had two occurrences within a one-month period, she received a written warning, which is the second step in the disciplinary process. (*Id.*; Doc. 77-2, pp. 9-11, 19 [41:2 to 46:2, 96:2 to 97:20]).

Arroyo challenged this occurrence and any disciplinary action stemming from October 29, 2010, contending she was unaware of the change that eliminated the previous unwritten two-minute grace period rule. (Doc. 77-2, pp. 19-20 [96:2 to 100:12], 72-97; Doc. 77-5, pp. 5-52, 7, ¶¶8, 18, ).

Although Schroeder verified that Arroyo was present for the January 2009 "Employee Infosession" mentioned above, Schroeder made an exception and did not give Arroyo an occurrence or the second step in progressive discipline under the attendance policy based on her one-minute transgression on October 29. (*Id.*).

On November 4, 2010, Arroyo was provided with copies of various Volvo policies, including the attendance policy. (Doc. 77-2, pp. 9-10 [39:25 to 42:25], 103-107; Doc.

77-5, p. 7, ¶19; Doc. 77-6, p. 76). On November 23, 2010, Arroyo punched in two minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the policy. (Doc. 77-2, pp. 64-65 [300:18 to 303:2], 100, 193; Doc. 77-5, p. 6, ¶20; Doc. 77-6, pp. 3, 18).

> I. *Beginning in December 2010, Arroyo Treated for PTSD; Arroyo Takes FMLA and STD Leave From December 23, 2010 to March 23, 2011*

Arroyo was treated for service-related post-traumatic stress disorder ("PTSD") in December 2010 and formally diagnosed in January 2011. (Doc. 77-2, p. 31 [159:5-20]). She was subsequently approved for and took concurrent FMLA and short-term disability ("STD") leave from December 23, 2010 to March 22, 2011. (*Id.* at p. 28 [140:16 to 140:23]; Doc. 77-5, pp. 12-13, ¶42).

> J. *In April 2011, Arroyo Sent for an IME and Subsequently Removed from All Safety Sensitive Work After Stating in a Report that She "Zoned Out" While Fulfilling Her Duties as Forklift Driver*

In April 2011, Arroyo filled out an indirect report (a document that material handlers use to document any time not spent picking or packing orders) and indicated that she "zoned out" for an unknown period of time during her shift. (Doc. 77-2, pp. 29 [151:3 to 152:21], 118; Doc. 77-5, pp. 12-13, ¶¶42, 43). Arroyo provided these reports on a daily basis to Dunn—her direct supervisor at the time. (*Id.*). Based on this comment, Volvo had safety concerns for Arroyo and her co-workers, given that much a material handler's job entails picking items with a forklift up to 20 feet off the ground. (*Id.*; Doc. 77-2, p. 29 [152:22 to 153:3]).

Accordingly, and at Volvo's request, John J. Koehler, M.D., conducted an independent medical exam ("IME") of Arroyo on April 14, 2011.[8] (Doc. 77-2, pp. 29 [153:4 to 156:11], 119-120; Doc. 77-5, p. 13, ¶43; Doc. 77-6, pp. 99-100). Based on his evaluation of Arroyo, Dr. Koehler recommended that Arroyo be removed from all safety sensitive work, including operation of a forklift. Based on that recommendation, Volvo removed Arroyo from forklift duties. (*Id.*).

### K. Arroyo Granted Leave to Attend PTSD Therapy Appointments from April through July 2011

Arroyo began therapy for her PTSD in April 2011. Volvo, through Regina Williams (Human Resources Business Partner), allowed Arroyo to use partial ETO days (in two hour increments) to leave her shift early on Tuesday nights to attend her first set of VA therapy appointments on Wednesday mornings from 9:00 to 11:00 a.m.; these appointments ran from April through July 2011. (SA58 and 59, ¶¶73-75; Doc. 77-2, pp. 33-34 [168:22 to 170:14]; Doc. 77-7, pp. 11-17, 3,¶4).

---

[8] Also on April 14, 2011, Arroyo punched in ten minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the attendance policy. (Doc. 77-2 [304:12 to 312:4], pp. 98, 216, 221, 223, 232, 236, 245, 248; Doc. 77-5, p. 8, ¶21; Doc. 77-6, pp. 1-5, 42.). On both May 10 and 12, 2011, Arroyo punched in one minute after the beginning of her shift and each time earned one-half (0.5) occurrences under the policy. (Doc. 77-2, pp. 66 [307:18-21], 98, 221); Doc. 77-5, p. 8, ¶22; Doc. 77-6, pp. 1-5, 47). On May 27, 2011, Arroyo punched in five minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the policy. (Doc. 77-2, pp. 66 [307:22 to 308:20], 98, 223); Doc. 77-5, p. 8, ¶24; Doc. 77-6, pp. 1, 49).

*L. On May 20, 2011, Arroyo Claims She Feels Discriminated Against Under the ADA After Volvo Does Not Approve Her for Weekend Overtime on the Basis that the Overtime Work Requires Operation of a Forklift in Violation of Her Active Medical Restrictions; Arroyo Continues Working Weekday Overtime*

On May 19, 2011, Arroyo attempted to sign up to work overtime for that upcoming Saturday, May 21, 2011. (SA59, ¶¶76-77; Doc. 77-2, p. 31 [159:21 to 160:23; Doc. 77-5, p. 13, ¶44; Doc. 77-6, p. 101; Doc. 77-7, pp. 18-20, 3-4, ¶5). Dunn, Schroeder, and Williams explained that Arroyo was not able to work overtime on Saturdays due to her then-existing restrictions from Dr. Koehler, as the Saturday work involved use of a forklift. (*Id*.). In response, Arroyo complained - *for the first time* - via email to Williams on May 20, 2011, that she felt discriminated against under the ADA. (*Id*.).

Arroyo arrived at the warehouse on Saturday, May 21, 2011, even though she was not scheduled to work, and observed employees packing boxes and strapping containers. (Doc. 77-2, p. 31 [160:24 to 161:24]). Arroyo stayed there "[m]aybe ten minutes max" and testified in her deposition that she does not know how long employees perform packing duties on Saturdays. (*Id*.). Arroyo sent a follow-up email to Williams on May 21, 2011, describing her observations and reiterating her perception that she was being discriminated against under the ADA. (Doc. 77-7, pp. 18-20, 3-4, ¶5).

Arroyo continued to work weekday overtime throughout this period. (Doc. 77-2, p. 33 [167:12-15]).

M. *Arroyo Granted Military Leave From May 31 to July 8, 2011; Arroyo Worked Weekend Overtime After Being Released to Full-Duty*

Arroyo took military leave from May 31, 2011 through July 8, 2011, returning on July 11, 2011. (SA60, ¶¶82-83, 86; Doc. 77-5, p. 14,¶45). Shortly thereafter, Dr. Koehler conducted a follow-up evaluation of Arroyo, and, contingent upon receipt of a letter from Arroyo's counselor, released her back to full-duty without restrictions. (*Id.*; Doc. 77-2, pp. 32-33 [162:6 to 167:15], 121-122; Doc. 77-6, pp. 102-103).

After Dr. Koehler released her to full-duty, Arroyo worked overtime, including weekend overtime. (Doc. 77-2, p. 33 [167:6-11]).

N. *Arroyo Granted Leave For a Second Set of PTSD Therapy Appointments from July Through October 2011; Though She Was Late to Work by Between Four and 85 Minutes on 11 Separate Occasions Following Therapy – She Received No Occurrences or Discipline*

Arroyo's second set of PTSD therapy appointments were on Tuesday evenings from 4:00 to 5:30 p.m. and ran from July 19, 2011 through October 11, 2011. (Doc. 77-5, p. 11, ¶40). Further, and though her shift began at 4:00 p.m., Arroyo told Schroeder that due to rush hour traffic she would not be at work before 6:30 p.m. on those days. (*Id.*). Also, although Arroyo punched in after 6:30 p.m. on 11 of those Tuesdays, she did not earn any occurrences under the Attendance Policy with respect to those dates. (*Id.*; Doc. 77-6, pp. 57-60, 62, 65-68, 60-71, (7/19 – 6:34 p.m.), (7/26 – 6:55 p.m.), (8/2 – 6:57 p.m.), (8/9 – 7:02 p.m.), (8/16 – 7:03 p.m.), (8/30 – 7:08 p.m.), (9/6 – 6:34 p.m.), (9/13 – 7:44 p.m.), (9/20 – 7:55 p.m.), (10/4 – 8:11 p.m.), (10/11 – 6:47 p.m.).

*O. Arroyo Receives Additional Occurrences in July and August 2011 for Tardies Unrelated to Her PTSD Therapy Appointments or Military Leave*

On July 29, 2011, Arroyo punched in one minute after the beginning of her shift and earned a one-half (0.5) occurrence under the policy. (Doc. 77-2, pp. 66 [308:21 to 309:15], 98, 232; Doc. 77-5, p. 8, ¶25; Doc. 77-6, pp. 1, 58). On August 19, 2011, Arroyo punched in five minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the policy; the following day, she punched in one minute after the beginning of her shift and received a one-half (0.5) occurrence under the policy. (Doc. 77-2, pp. 66-67 [309:16 to 310:12], 98, 236; Doc. 77-5, p. 8, ¶26; Doc. 77-6, pp. 1, 62). On August 20, 2011, Arroyo punched in one minute after the beginning of her shift and received a one-half (0.5) occurrence under the Attendance Policy (*Id.*).

*P. On August 24 and 25, 2011, Schroeder Counsels Arroyo on Volvo's Violence and Harassment Policies, Providing Her Copies of Same, After She Made Threats of Physical Violence Against a Co-Worker, Referring to Her as "The Enemy" and "Her Target"; In Response, Arroyo Claims Schroeder is Discriminating Against and Harassing Her and Requests Accommodations in an August 26, 2011 Email to Williams*

According to Arroyo, on or about Tuesday, August 23, 2011, her co-worker, Brian Accidental, informed her that another co-worker (who at the time Arroyo believed to be Tracey Adams, but subsequently learned was actually someone else) had called the police on Saturday, August 20, 2011, because Arroyo had parked her motorcycle in a handicap spot at the Distribution Center. (Doc. 77-2, pp. 35 [177:5 to 183:15]). Arroyo met with Dunn that same day to complain. (Doc. 77-2, pp. 35-37 [177:5 to 183:15]). Dunn informed Schroeder that Arroyo had commented that Adams is "the

enemy" and "her target" and that she could have gone to Adams and punched her in the face or cursed her out. (Doc. 77-5, p. 14, ¶46). Arroyo denies saying that she wanted to do anything violent to Adams. (Doc. 77-2, p. 37 [182:6-10]).

Schroeder and Dunn met with Arroyo on August 24, 2011, and informed her that Volvo would not be addressing any rumors related to the motorcycle parking incident and reminded her that threats against a colleague are against company policy and she would be subject to termination if her behavior continued. (Doc. 77-2, p. 37 [183:2-12]; Doc. 77-5, p. 14, ¶46). The next day, Schroeder spoke with Williams and Arroyo was provided with copies of the Workplace Violence and Harassment policies. (Doc. 77-2, p. 37 [182:11-23]; Doc. 77-5, p. 14, ¶46; Doc. 77-6, pp. 104-105; Doc. 77-7, pp. 21-31, 4, ¶6).

In response, on August 26, Arroyo sent Schroeder an email (copying Regina Williams) providing a link to the Department of Labor's ("DOL") "America's Heroes at Work" website that addresses challenges facing service members returning to work with PTSD. (Doc. 77-2, pp. 37-38 [184:3 to 186:25], 124-125; Doc. 77-5, p. 14-15, ¶47; Doc. 77-6, pp. 107-108; Doc. 77-7, pp. 33-34, p. 4, ¶7). Arroyo also requested numerous accommodations. (*Id.*). Specifically, Arroyo requested the presence of human resources via phone and either Dunn or Maureen Somersett (Schroeder's administrative assistant) during all discussions with Schroeder; disability awareness training for Schroeder, the Material Handler Supervisors, and her co-workers; and a quiet place to meditate/utilize relaxation techniques during breaks and prior to work. (*Id.*).

*Q. Arroyo Receives a Formal Written Warning and Three-Day Suspension for*
*Numerous Violations of the Local Attendance Policy on August 31, 2011*

On August 31, 2011, pursuant to the attendance policy, Schroeder presented

Arroyo with CAPs in the form of a formal written warning and three-day

suspension—the second and third steps in the progressive disciplinary process

under the attendance policy—for earning five occurrences within the six month

period from October 19, 2010 to August 19, 2011, and for earning five occurrences

within the six month period from October 19, 2010 to August 20, 2011, respectively.

(Doc. 77-2, pp. 62-63 [293:1 to 294:23], 179, 180; Doc. 77-5, pp. 7-8, ¶28; Doc. 77-6,

pp. 77-78). Per the revision in 2009 to the rolling period under the attendant policy,

the time that Arroyo was out on A&S, FMLA, and Military Leave was excluded in

measuring the six month periods for these CAPs.[9] (*Id.*).

*R. On September 1, 2011, Volvo Grants Arroyo Her Requested Accommodation*
*of a Meditation Space and Arroyo Requests at Least 12 Additional*
*Accommodations, Which Volvo Takes Under Review*

On September 1, 2011, Schroeder responded to Arroyo's requests for

accommodations (copying Williams) and granted Arroyo's request for a quiet space

to meditate prior to the beginning of her shifts and during breaks. (Doc. 77-2, pp. 38

---

[9] On September 6, 2011, Temko emailed Schroeder to tell him that, in the course of Temko's
audit of the time records in connection with the written warning and three-day suspension
CAPs, he changed Arroyo's attendance record on her Excel sheet to reflect an excused
absence for December 23, 2010. (Doc. 77-5, p. 9 ¶29; Doc. 77-6, pp. 79-81). Accordingly,
Volvo removed Arroyo's occurrence for that day. (*Id.*). Temko explained that the
adjustment only impacted the dates of the occurrences making up Arroyo's formal written
warning (which, after the adjustment, ran from October 11, 2010 to August 19, 2011
instead of October 19, 2010 to August 19, 2011). (*Id.*). Since Arroyo still had five
occurrences within a six-month period, the written warning CAP stood. (*Id.*).

[186:3-25], 124; Doc. 77-5, p. 14-15, ¶47; Doc. 77-6, p. 107; Doc. 77-7, pp. 33, 5, ¶8).

Later that same day, Arroyo emailed Williams with several additional

accommodation requests: (1) a flexible work schedule to allow her to "make up time"

in case of tardiness; (2) the ability to use noise dampening devices (such as earplugs

or headphones); (3) the ability to listen to audio relaxation devices; (4) a place to

meditate or relax (which Arroyo noted had already been provided); (5) a mentor

(whom Arroyo identified as Patrick Dunn, someone she felt comfortable

approaching); (6) time off for counseling (which Arroyo noted had already been

provided); (7) day-to-day guidance and feedback; (8) the ability to use the company's

wellness program (which Arroyo noted had already been provided); (9) the ability to

take breaks during panic/anxiety attacks; (10) disability awareness training (as

noted previously); (11) all communications given to Arroyo in writing; and (12) the

ability to call a support person during panic/anxiety attacks. (Doc. 77-2, pp. 123-

124; Doc. 77-7, pp. 37, 5, ¶9). Williams responded on September 1, 2011 to say the

requests were taken under advisement and that Volvo would be back in touch. (Doc.

77-2, pp. 38-39 [188:3 to 191:16], 126-129, 130-131; Doc. 77-7, pp. 35-36, 5, ¶9).

### S. In September 2011, Arroyo Requests an Investigation of Schroeder for Alleged Disability-Based Harassment and Files an EEOC Charge Claiming Disability Discrimination and Retaliation

On September 3, 2011, while Volvo was considering Arroyo's requests for

accommodation, Arroyo sent an email to Dennis Sholl, Director of the Central,

West, and Mexico Regions for AB Volvo, requesting an investigation of Schroeder

for disability-based harassment. (Doc. 77-4, pp. 3 [144:4-24], 6-7). Sholl responded

by email memorandum on September 13, 2013, explaining that Williams would contact her to begin a harassment investigation. (Doc. 77-4, pp. 4[157:6 to 159:7], 9, 10). Arroyo filed a charge of discrimination with the EEOC (Charge No. 440-2011-05756) on September 13, 2011, alleging discrimination and retaliation under the ADA. (SA62, ¶ 96; Doc. 77-5, p. 15, ¶48; Doc. 77-6, pp. 109-110).

> ### T. Also in September, Volvo Follows Up With Arroyo Regarding Her Accommodation Requests, Granting at Least Six and Confirming Those Still Under Review

After Williams and Arroyo discussed Arroyo's accommodation requests, Williams sent Arroyo a memo on September 16, 2011, explaining that Volvo had granted several of Arroyo's requested accommodations and that other accommodations were still under review. (Doc. 77-2, pp. 39-40 [191:19 to 196:12], 130, 135-137; Doc. 77-7, pp. 35, 40-42, 5-6, ¶ 10). Specifically, Volvo granted Arroyo's requests for a place to meditate; a mentor; time off for counseling; access to the company's wellness program; breaks during panic/anxiety attacks; and the ability to call a support person during panic/anxiety attacks. (*Id.*).

Requests still under review included a flexible schedule to allow make up time in case of tardiness, the ability to use earplugs or headphones in both ears (one ear was allowed), the ability to listen to audio relaxation devices in both ears (one ear was allowed), day-to-day guidance and feedback, disability awareness training, and the request for all communications to be in writing.[10] (*Id.*).

---

[10] On September 21, 2011, Williams sent a follow-up email to Arroyo stating which breaks would be paid and unpaid. (Doc. 77-2, p. 206; Doc. 77-7, ¶12, p. 50).

*U. Also in September 2011, Williams Tries to Investigate Arroyo's Harassment*
*Claim but; Arroyo Repeatedly Refuses to Cooperate in the Investigation*

On September 19, 2011, Williams notified Arroyo via email that she had been assigned to investigate Arroyo's harassment complaint, that she would be at the Distribution Center on September 20, 2011, and that she would like to meet with Arroyo to begin the investigation. (Doc. 77-2, pp. 41-44 [198:4 to 213:19], 143, 141; Doc. 77-7, pp. 54, 56, 6-7, ¶13). That same day, Arroyo replied back and stated that it was in her "best interest to obtain legal counsel before proceeding any further with the company." (*Id.*).

Williams responded later that day, explaining she had traveled from Atlanta to Chicago to conduct the investigation for three days. (Doc. 77-2, p. 140; Doc. 77-7, ¶14, p. 53). She asked Arroyo to let her know once she obtained legal counsel and was prepared to meet. (*Id.*). Arroyo replied that she would be willing to answer questions by email in the interim. (Doc. 77-2, p. 139; Doc. 77-7, pp. 52-53, 7, ¶14). On September 21, Williams emailed Arroyo some questions "to understand more specifics about your concerns so that I can begin the investigation" and to remind her of the anti-retaliation provisions of Volvo's Harassment Policy. (*Id.*). In response, Arroyo refused to answer any questions and claimed that she had been "advised to refrain from answering any." (Doc. 77-2, p. 138; Doc. 77-7, pp. 51, 7, ¶14).

*V. Arroyo Sent Home From Work on September 21, 2011 After Refusing to Remove Headphones, a Safety Risk and Violation of Policy*

On September 20, 2011 and September 21, 2011, Arroyo reported to work with headphones on both ears. (Doc. 77-2, p. 45 [214:14 to 215:16]; Doc. 77-7, pp. 57, 7, ¶15). Due to safety concerns relating to whether she would be able to hear forklift activity, and consistent with Volvo's Local Music, Radio I-Pod MP3 Policy, Dunn asked Arroyo to remove one of her headphones. (*Id.*). When Arroyo refused, she was sent home. (*Id.*).

*W. On September 22, 2011, Volvo Engages in Discussion with Arroyo Regarding Her Request to Wear Ear Plugs, Suggesting She Provide Medical Document and/or Undergo an IME and Offering Paid Time Off For That Purpose; In Response, Arroyo Claims the Request for Information Constitutes Harassment; Arroyo Still Refuses to Cooperate in Any Harassment Investigation*

Thereafter, on September 22, Williams engaged in email dialogue with Arroyo regarding her request to wear ear plugs or noise dampening devices in both ears and a flexible work schedule to allow make up time in case of tardiness. (Doc. 77-2, pp. 45-51 [2156 to 240:4], 145-159; Doc. 77-7, pp. 58-72, 8, ¶16). Williams explained that Volvo had safety concerns about Arroyo wearing ear plugs in both ears and that Volvo needed additional medical information as to whether tardiness and the need for a flexible work schedule were related to Arroyo's condition. (Doc. 77-2, p. 150; Doc. 77-7, pp. 60-65, 8, ¶16). Williams requested that Arroyo obtain an IME with Dr. Koehler with respect to her ear plug request and provide documentation from her own psychiatrist concerning her request for a flexible work schedule. (*Id.*). Williams explained that Arroyo would receive paid time off from work until this

medical documentation could be obtained. Arroyo sent Williams an email on September 26, 2011, requesting to return to work, to be provided the accommodations she requested, and to be protected from harassment from her coworkers and management. (*Id.*).

Arroyo refused to provide any documentation from her psychiatrist and did not attend the IME Volvo scheduled with Dr. Koehler. (Doc. 77-2, p. 148; Doc. 77-7, pp. 61, 8, ¶17,). Arroyo never underwent an IME or provided the requested documentation. (Doc. 77-7, p. 8, ¶17).

On September 27, 2011, Williams emailed Arroyo a memo addressing her three areas of concern. (Doc. 77-2, pp. 145-146, 154-159; Doc. 77-7, pp. 58, 67-72, 9, ¶18). Williams explained that she did not have enough information to proceed with a harassment investigation because Arroyo refused to answer the questions she provided. (*Id.*). Williams attached a simplified form for Arroyo to fill out. (*Id.*). Williams also explained that Volvo had not denied any of Arroyo's accommodation requests and sought to continue the interactive process in good faith, reiterating her requests for additional medical information. (*Id.*). Finally, Williams stated that Arroyo was allowed to return to work and use one ear plug/head phone in the interim. (*Id.*).

Later that same day, Arroyo sent Williams an email asserting a claim for harassment against Williams because she requested the aforementioned IME and medical documentation. (Doc. 77-2, pp. 51-52 [240:13 to 242:9], 160; Doc. 77-7, pp. 73, 9, ¶19). Arroyo did not complete the questionnaires that Williams provided.

(Doc. 77-2, p. 51 [238:5 to 240:4]; Doc. 77-7, p. 9, ¶20). On October 3, 2011, she

returned to work without headphones. (Doc. 77-2, p. 52 [243:9-14]).

### X. On October 10, 2011, Arroyo Received Another Occurrence Under the Attendance Policy

On October 10, 2011, Arroyo punched in one minute after her shift  started,

earning a-half (0.5) occurrence under the Attendance Policy. (Doc. 77-2, pp. 67

[310:13 to 311:3], 98, 245; Doc. 77-5, pp. 1, 71, 9, ¶30).

### Y. Also in October 2011, Volvo Grants Arroyo's Request for Leave to Attend a Third Series of PTSD Therapy Appointments

Also in October 2011, Arroyo requested time off for her third set of PTSD

therapy appointments that were scheduled on Tuesdays from 4:00 to 5:30. (Doc. 77-

2, pp. 60-62 [285:1 to 291:24], 175-177; Doc. 77-7, pp. 82-84, p. 9, ¶21). Volvo

accommodated her request by allowing her to use ETO in four-hour increments

until it was exhausted and then agreed she could attend her remaining

appointments using unpaid leave. (*Id.*).

### Z. In October 2011, Arroyo Repeatedly Abuses Volvo's Meditation Room Accommodation

When Volvo provided Arroyo an accommodation of an office to use as a

meditation room prior to the beginning of her shift and during breaks, Arroyo

initially parked in the employee lot in the front of the Distribution Center and

walked through the warehouse to the office, which was located in the rear of the

Distribution Center. (Doc. 77-2, pp. 53-55 [257:4 to 263:14], 169-170; Doc. 77-5, pp.

9-10, ¶¶31, 32; Doc. 77-6, pp. 82-87). On October 18, 2011, Arroyo received a memo

from Schroeder reminding her of Volvo's safety shoe policy and how she would need to wear safety shoes when walking through the facility. (*Id.*).

Thereafter, Arroyo started to park in the rear of the Distribution Center immediately adjacent to the dock area. (Doc. 77-5, p. 10, ¶33). Rather than put on her safety shoes and walk through the warehouse, Arroyo punched in early in the front of the Distribution Center, exited the building, and then drove her car to park in the rear of the Distribution Center to use the meditation room prior to the beginning of her shift. (*Id.*). Arroyo then waited until the shift start bell rang before she exited the warehouse, got back in her car, drove it around the building to park it in the front employee lot, and then reentered the warehouse and put on her safety shoes before starting her shift. (*Id.*). In taking this extra time after the shift start bell, Arroyo was in violation of the attendance policy, which required all employees to be "in the building and ready to work at the scheduled start time and continue to work until the scheduled hours of work are completed." (*Id.*, p. 23).

Arroyo testified in her deposition that it "never entered [her] mind" to leave the meditation room five minutes earlier, but admitted that there was no one preventing her from leaving the room earlier. (Doc. 77-2, p. 57 [270:4 to 271:17]).

After Arroyo started her shift late on October 31, 2011, Schroeder met with her on November 1, 2011, to discuss her use of the meditation room and failure to begin working at her shift start time. (Doc. 77-2, pp. 55-56 [264:4 to 269:19], 171-172; Doc. 77-5, pp. 10-11, ¶34; Doc. 77-6, pp. 88-91). Though Arroyo violated the shift start rule on October 31, she did not receive an occurrence. (Doc. 77-5, pp. 10-11, ¶34).

Rather, during the November 1 meeting, Schroeder presented a memo to Arroyo, explaining that the use of the meditation room does not negate the need for her to be prepared to begin work when the bell rings and that future violations would result in occurrences. (*Id.*; Doc. 77-2, pp. 55-56 [264:4 to 269:19], 171-172; Doc. 77-6, pp. 88-91). During the meeting, Schroeder also explained that Arroyo must access the meditation room by walking inside the warehouse, because parking in the rear of the Distribution Center posed safety concerns.[11] (*Id.*). On November 2, 2011, Schroeder posted a reminder notice for all employees. (Doc. 77-5, p. 11, ¶35; Doc. 77-6, pp. 92-95).

### AA. Due to Arroyo's Continued and Cumulative Violations of the Attendance Policy, Volvo is Forced to Terminate Her

After her meeting with Schroeder, Arroyo started her shift late again on November 2, 2011. (Doc. 77-2, pp. 58-60 [276:2 to 283:24], 173-174; Doc. 77-5, p. 11, ¶36; Doc. 77-6, pp. 1, 96). Accordingly, on November 3, Schroeder gave Arroyo a CAP in the form of a verbal warning for this incident. (*Id.*). The CAP also provided that Arroyo would be charged a one-half (0.5) occurrence for violation of the start rule under the attendance policy. (*Id.*).

Arroyo did not read the CAP, refused to it, and refused to speak to the company without her attorney present. (*Id.*). Arroyo started her shift late again on November 4, 2011, and Schroeder presented Arroyo with a CAP in the form of a formal written

---

[11] On October 24, 2011 and October 28, 2011, Schroeder sent emails to the Material Handler Supervisors reminding them that employees should only park in the employee lot and not in the rear of the Distribution Center next to the dock area. (Doc. 77-5, pp. 92-95, 11, ¶35).

warning. (Doc. 77-2, pp. 60 [284:2-24], 173-174; Doc. 77-5, p. 11, ¶37; Doc. 77-6, pp. 2, 97). The CAP also provided that Arroyo would be charged a one-half occurrence (0.5) for violation of the start rule under the attendance policy. (*Id.*). At that point, Arroyo had incurred five occurrences within a six month period. (Doc. 77-5, pp. 11-12, ¶38; Doc. 77-6, p. 98). Volvo determined that Arroyo had reached the fourth step in the progressive disciplinary process and terminated her. (*Id.*).

## Summary of the Argument

First, Arroyo's appeal should be dismissed as at no point in her Appellant's Brief does she clearly articulate how or why she believes the District Court erred as a matter of law, or assert how the alleged error(s) impacted the District Court's decision as to each of her claims. Rather, her opening brief simply recites facts allegedly showing how Volvo discriminated against her, but fails to challenge the basis for the District Court's judgment in any coherent manner.

Second, Arroyo has waived arguments and fact issues on appeal by either failing to raise them before the District Court or failing to raise them in her opening brief such that her appeal should be dismissed in whole or in part, or, alternatively, various facts, arguments and or issues should be deemed waived.

Third, summary judgment should be affirmed on the merits for all the reasons set forth in the District Court's Memorandum Opinion and Order Granting Summary Judgment and Order Denying Motion for Reconsideration, as well as for the reasons set forth below.

## Argument[12]

### A. Standard of Review

The District Court's decision to grant summary judgment to Volvo is subject to *de novo* review, and this Court may affirm the District Court's decision on any basis supported by the record. *Durkin v. City of Chicago*, 341 F.3d 606, 611 (7th Cir. 2003). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When reviewing a summary judgment motion, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Even so, the non-movant is only entitled to have *reasonable* inferences drawn in her favor, not every conceivable inference. *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989). Speculation cannot defeat a motion for summary judgment. *O'Neal v. Chicago*, 392 F.3d 909, 912 (7th Cir. 2004). Further, if the evidence is merely colorable, is not significantly probative, or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Anderson*, 477 U.S. at 261.

---

[12] Internal citations to the District's Court's September 30, 2014 Memorandum Opinion and Order (SA2-42) granting Volvo Summary judgment omitted.

*B. Arroyo Fails to Assert an Articulable Basis for Disturbing Summary Judgment and Fails to Clarify the Precise Relief Sought Such That Her Appeal Should be Dismissed*

An appellant's brief must include an "articulable basis" for disturbing the district court's judgment. *Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001). This means it must contain appellant's "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies" and that "a generalized assertion of error" will not suffice. FRAP 28(a)(8)(A); *Anderson,* 241 F.3d at 545; S*ee also Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 527 (7th Cir. 2003). A brief must also contain "a short conclusion stating the precise relief sought." FRAP 28(a)(9). Where a brief – even one drafted by a nonlawyer – fails to meet this burden, the appeal must fail. *Anderson,* 241 F.3d at 545. This Court "cannot fill the void by crafting arguments and performing the necessary legal research." *Id.*

Here, the fundamental flaws with Arroyo's Appellant's Brief begin with her Statement of the Issues Presented for Review and are then carried throughout her Argument. Arroyo does not even specify which of her claims are applicable to which issues. Likewise, her case law citations seemingly shift back and forth at will between points concerning her USERRA and the ADA claims, while many subsections of her Brief contain nothing more than factual assertions (without legal argument), essentially cut and paste from her Statement of the Case section without any indication of how the assertions apply to her claims.

In short, Arroyo has not even come close to clearly articulating how or why the District Court erred, how the alleged error(s) impacted the District Court's decision as to each of her claims or what "precise relief" she is seeking as to each of her claims. Accordingly, there is no appellate claim to review and Arroyo's appeal should be dismissed outright. *See also Townsend v. Alexian Bros. Med. Ctr.*, 589 F. App'x 338, 341 (7th Cir. 2015) (brief presented "no developed appellate claim to review" where it merely "present[ed] a rerun of [] show before the district court, along with arbitrary case citations and disconnected references to inadmissible evidence"); *Nguyen v. Illinois Dept. of Central Management Services*, 2003 WL 1796008 (7th Cir. 2003) (appellate review forfeited where brief recited factual allegations of discrimination but failed to develop argument explaining why the court erred and failed to challenge basis of court's ruling); *Landfair v. J.B. Hunt Transport, Inc.*, 2008 WL 538674 (7th Cir. 2008) (holding employee not entitled to relief on appeal from judgment entered in employer's favor on claims of race and age discrimination under Title VII and Age Discrimination in Employment Act, where substance of employee's appellate brief did not challenge district court's rulings and reasoning, and he offered no basis for overturning court's judgment).

C. *Arroyo Also Waives Arguments and/or Facts on Appeal to The Extent They Were Not Raised in the District Court Below*

Pursuant to Northern District of Illinois Local Rule 56.1(b)(3)(C), Arroyo was required to submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references

29

to the affidavits, parts of the record, and other supporting materials relied upon."
The Seventh Circuit has "repeatedly held that the district court is within its
discretion to strictly enforce compliance with its local rules regarding summary-
judgment motions." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th
Cir. 2009) (internal citations omitted). Moreover, it is well-settled that a "party
waives any argument that it does not raise before the district court." *McCoy v.
Maytag Corp.*, 495 F.3d 515, 525 (7th Cir. 2007) (internal citations omitted); *See
Sere v. Board of Trustees of the Univ. of Ill.*, 852 F.2d 285, 287 (7th Cir.1988) ("It is
not the obligation of this court to research and construct the legal arguments open
to parties, especially when they are represented by counsel."). It is a similarly "well-
settled rule that a party opposing a summary judgment motion must inform the
trial judge of the reasons, legal or factual, why summary judgment should not be
entered." *Id.* If it does not do so, and loses the motion, it cannot raise such reasons
on appeal." *Id.*

In her Appellant Brief, Arroyo has impermissibly included additional facts
not included in that statement and also raised additional legal arguments
for the first time on appeal. For example, Arroyo claims in her Appellant
Brief that similarly-situated employees were treated differently with respect
to attendance discipline. Such claim – in addition to being incorrect – was
not raised or presented to the District Court and is therefore waived.
As the District Court explicitly noted, Arroyo "has not

identified any other employees who were not disciplined for tardiness or unexcused absences." (SA25). The inclusion of this argument for the first time on appeal is particularly egregious in this case because Arroyo argued to the District Court that "[s]ometimes a plaintiff cannot identify similarly situated employees…" and argued that the Court could nonetheless find pretext without such evidence. (Doc. 78, p. 9)

Similarly, Arroyo blatantly attempts to insert at least one new piece of evidence for this Court's review: deposition testimony from Schroeder regarding an email response he sent to Williams on the day of Arroyo's termination. (Appellant's Br., p, 36-37). Without the email itself before the Court, which was available at the time of summary judgment and which Arroyo admits she "negligently omitted" from the record, (Appellant's Br., p. 36), Schroeder's testimony cannot even be given proper context and Volvo had no opportunity to respond to the same before the District Court. Indeed, Arroyo did not even rely on Schroeder's testimony, let alone the email itself, in preparing her Local Rule 56.1 Statement or in any of her legal arguments opposing summary judgment below. Accordingly, Schroeder's deposition testimony concerning the email is improper evidence for this Court to consider.

Arroyo has waived any matters she failed to raise before the District Court such that her appeal should be dismissed. Alternatively, to the extent she failed to properly present facts in her Rule 56.1 Statement, such facts should be deemed waived. Further, any facts or arguments Arroyo attempts to raise for the first time on appeal, which Volvo attempts to address below, should be deemed waived.

*D. The District Properly Granted Summary Judgment as To Each of Arroyo's Claims and Summary Judgment Should be Affirmed*

Even if this Court determines that Arroyo has not waived or forfeited any arguments on appeal, summary judgment was nonetheless appropriate and should be affirmed. As Arroyo's Appellant Brief does not clearly articulate her arguments on appeal, Volvo submits that the District Court's 41-page Memorandum Opinion and Order granting summary judgment, and six-page, single-spaced Order denying Arroyo's motion to reconsider, accurately set forth the material facts and applicable law and analysis as to each of Arroyo's claims. (SA2-48). To be clear, Volvo contends that due to Arroyo's Brief's organization, a complete response to every factual statement or purported argument is not feasible. It is entirely unclear in many instances what claim Arroyo is discussing or even how certain factual allegations apply to a given claim. However, to the extent possible from a liberal reading of Arroyo's Appellant Brief, Volvo will attempt to address each of Arroyo's claims below.

*i. Summary Judgment Was Appropriate as Arroyo's Claims are Not Supported by Facts, but Her Perceptions and Feelings*

As an initial matter, Volvo refutes Arroyo's broad-brush argument that the District Court improperly granted summary judgment by allegedly making credibility determinations, failing to resolve inferences in Arroyo's favor and inappropriately determining Volvo's motives and intent. Arroyo's argument can best be summed up with the following phrase from her Appellant's Brief: Arroyo's "own

affidavit and deposition testimony describe her *perception* of the hostile treatment she receives by [Volvo's management] discriminatory intentions." (Appellant's Br., p. 32) (emphasis added). According to Arroyo, this is sufficient to withstand summary judgment.

Arroyo is incorrect. It is well-settled in the 7th Circuit that "[f]acts, not an employee's perceptions and feelings, are required to support a [] claim." *Uhl v. Zalk Josephs Fabricators, Inc.,* 121 F.3d 1133, 1137 (7th Cir. 1997) (sustaining summary judgment where allegations were based on employee's "beliefs" and "feelings," not personal knowledge). All of Arroyo's claims are speculative at best; and "speculation does not meet a party's burden of producing some defense to a summary judgment motion." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995). Indeed, speculation not only fails to "create a genuine issue of fact; [] it creates a false issue, the demolition of which is a primary goal of summary judgment." *Id.*

As discussed further below with respect to her individual claims, Arroyo's assertion that every unpleasantry she allegedly experienced at Volvo was because of her military status and/or disability are simply not supported by the evidence. Instead, her allegations are based on what she believes or feels. The District Court did not make credibility determinations, make inferences in Volvo's favor, or determine its motives and intent. Rather, it chose not to give credence to Arroyo's speculative and wildly-imagined theories based solely on her "perceptions" and "feelings."

### ii. The District Court Properly Granted Summary Judgment as to Each of Arroyo's Discrimination Claims and Summary Judgment Should be Affirmed

#### a. Under the ADA[13]

The ADA prohibits employers from taking adverse employment actions against their employees because of a disability. *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 606 (7th Cir. 2012); *see* 42 U.S.C. § 12112(a). To establish a violation of the ADA, an employee must show "1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009) (quoting *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000)).

##### 1. Arroyo's Discrimination Claim fails Via Both the Direct and Indirect Methods

In the Seventh Circuit, a plaintiff may prove discrimination using either the direct method, which contemplates both direct and circumstantial evidence, or the indirect method via the well-established burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125-28 (7th Cir. 2006).

---

[13] Complaints alleging employment discrimination under the Rehabilitation Act are governed by the ADA standard. See 29 U.S.C. § 794(d); *Scott v. Kaneland Community Unit School District # 302*, 898 F. Supp.2d 1001 (N.D. Ill. 2012). Accordingly, the analysis with respect to Arroyo's ADA claims applies equally to her Rehabilitation Act claims.

A. The Direct Method

Although it is unclear from the organization of her Appellant's Brief precisely where she addresses the direct method, Arroyo appears to regurgitate the same argument that was properly rejected by the District Court in her section entitled "Arroyo's Convincing Mosaic Of Circumstantial Evidence." (Appellant Br., p. 32). Specifically, Arroyo claims that "[t]he comments and remarks embedded in the many emails exchanged among Volvo's Management Team clearly show their repeated lack of cooperation and good faith in dealing with the particular problems of its only employee subject to military orders who is afforded the protections and benefits of USERRA." (*Id.*).

However, as the District Court aptly noted, Arroyo did "not cite to any specific emails in support of her argument." (SA22). Arroyo once again fails to cite to any specific emails in support of her argument, and otherwise fails to present any legal argument entitling her to relief. (Appellant's Br., pp. 32-33). *See Modrowski v. Pigatto,* 712 F.3d 1166, 1167–68, 1170–71 (7th Cir. 2013) (it is plaintiff's obligation to come forward with sufficient evidence to support a claim); *Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006) (not the court's job to sift through the record to find evidence).

Even if Arroyo were to rely on the totality of the emails referenced in the parties' statements of fact submitted to the District Court, and again in her Appellant's Brief, these emails do not reveal direct evidence of discrimination. As the District Court found, "[at best, the emails reveal Volvo's interest in keeping abreast of

Arroyo's military status and not running afoul of USERRA and the ADA, while holding Arroyo accountable for company policies when she was not on leave." (SA23).

Moreover, these emails affirmatively show Volvo took no adverse employment action against Arroyo as a result of these discussions. *Cf. Breneisen v. Motorola, Inc.*, 512 F.3d 972, 981-82 (7th Cir. 2008) (concluding that a supervisor's comments that expressed frustration with employees' taking medical leave, but that resulted in no loss of job benefits, were not materially adverse). In short, Arroyo has failed to establish disability discrimination through the direct method and the District Court properly granted summary judgment as to this proof method.

## B.    The Indirect Method

Under the indirect method, Arroyo must show she: (1) was a qualified individual with a disability; (2) met Volvo's legitimate expectations; (3) was subject to an adverse employment action; and (4) the circumstances suggest that her disability was the reason Volvo took adverse action against her. *Timmons*, 469 F.3d at 1127-28. The showing under the fourth prong may (not must) be made by demonstrating similarly-situated nondisabled employees were treated more favorably.  If Arroyo shows all four of these elements, Volvo has a burden of showing a legitimate, non-discriminatory reason for taking adverse action against her. If Volvo meets this burden, Arroyo must show that Volvo's stated reason is pretextual. *Id.*

i.  Arroyo Neither a Qualified Individual With a
    Disability Nor Meeting Volvo's Legitimate
    Expectations

As held by the Seventh Circuit, and acknowledged by the District Court

below, an employee with "erratic, unexplained absences" is not a qualified

individual with a disability for purposes of the ADA. *See Waggoner v. Olin*

*Corporation*, 169 F.3d 481, 484-85 (7th Cir. 1999). Moreover, this Court has held

that violating an employer's work rules, including attendance guidelines, is not

meeting the employer's legitimate expectations. *See, e.g., Contreras v. Suncast*

*Corp.*, 237 F.3d 756, 760-61 (7th Cir. 2001) (holding that an employee failed to meet

his employer's legitimate expectations by, among other things, incurring eight

attendance violations).

In her Appellant's Brief, Arroyo fails to address this spot-on authority,

instead oddly listing reasons for which she was *not* fired, while at the same time

conceding that she was terminated under the attendance policy. (Appellant Br., p.

37-38). In short, Arroyo concedes her inability to establish the first or second prong

of a prima facie case of discrimination under the indirect method.

ii.  Similarly-Situated Employees Treated the Same

Arroyo also cannot establish the fourth prong of her ADA discrimination

claim under the indirect method. Even if this Court determines that Arroyo has not

waived her argument with respect to purported comparators under the attendance

policy (*see* Argument Section C, above), the undisputed evidence shows Volvo treated similarly-situated employees the same.

For instance, in 2008, Victor Jackson received occurrences for being two, three, five, six, seven and ten minutes late. (Doc. 77-5, p. 74). In 2009, he received an occurrence for being one minute late. (Doc. 77-5, pp. 131-36). Like Arroyo, Jackson received corrective actions per Volvo's attendance policy based on how many occurrences he accumulated within a given time period, and some of his occurrences counted for purposes of more than one disciplinary action. (Doc. 77-5, p. 136) (January occurrences led to written warning, suspension, and termination). In 2009, Teo Kennedy, Bill Somenzi and Tony Foster all received occurrences for being one or two minutes late. (Doc. 77-5, pp. 137-38, 143-44, 127-28). In 2011, Teo Kennedy received occurrences for punching out one minute early, and for being one, two, seven, eight and nine minutes late. (Doc. 77-5, pp. 173-74). Jill Knight received an occurrence in 2012 for arriving two minutes late. (Doc. 77-5, pp. 208-09).

Moreover, Arroyo is simply flat wrong in her contention that "[a] number of employees have marks under 'excused cumulative days,' while Arroyo is not given any excuses under that category." (Appellant's Br., p. 21). On the contrary, Arroyo's attendance records very clearly show that (in addition to the numerous time off she received for military obligations and FMLA/STD) she *did* receive time for excused days on November 10 through 12 in 2010. (Doc. 77-6, p. 3). Accordingly, Arroyo cannot establish the fourth prong of her prima facie case.

### iii. Arroyo Cannot Establish Pretext

Even assuming *arguendo* that Arroyo could establish a prima facie case, Volvo has articulated a legitimate non-discriminatory reason for Arroyo's termination (violation of the attendance policy). Since Volvo has put forth a non-discriminatory explanation for its termination of Arroyo, the burden shifts to Arroyo to prove that the bias-neutral reason proffered by Volvo was a pretext or an explanation designed to obscure the unlawful discriminatory employment action. *Emmel v. Coca–Cola Bottling Co. of Chicago,* 95 F.3d 627, 629 (7th Cir. 1996).

In order to avoid summary judgment, a plaintiff must show that the reason given is unworthy of credence. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000). To accomplish this requirement, a plaintiff must provide evidence to prove that the defendant's reasons were either factually baseless, were not the actual motivation for the action, or were insufficient to motivate the action. *Gordon v. United Airlines, Inc.,*246 F.3d 878, 888–89 (7th Cir. 2001). Arroyo must "*specifically* refute facts which allegedly support the employer's proffered reasons"; conclusory statements about an employer's prejudice are insufficient. *Alexander v. CIT Tech. Fin. Servs., Inc.,* 217 F. Supp. 2d 867, 890 (N.D. Ill. 2002).

As with her other arguments, it is entirely unclear what evidence Arroyo is attempting to rely upon to show pretext. From the mention of "pretext" in her Statement of the issues (Appellant's Br., p. 3), it appears that Arroyo is arguing that her occurrences for starting her shift 1 to 3 minutes late (those occurring in

November 2011) are pretextual because she actually punched in early on the days in question.[14] This contention appears to also be contained within her Argument section entitled "Schroeder's Proffered Reason for Discharge Unworthy of Credence." (Appellant's Br., pp. 39-40). As the District Court found, such an argument completely ignores, and confuses, why Arroyo was disciplined:

> Arroyo relies on this distinction without addressing the undisputed evidence that Volvo determined that she started her shift late on November 4, 2011, *despite having punched in timely*. This is because Arroyo would punch in prior to going to the meditation room (provided to her as an accommodation), stay in the mediation [sic] room until the shift start bell rang, then leave the room, walk to her car, drive around the side of the building to re-park her car, and then reenter the warehouse. Under any definition of being "in the building and ready to work at the scheduled start time," this would not suffice.

(SA24) (emphasis in original). Moreover, Arroyo's shift start rule violations, and corresponding occurrences under the attendance policy, were only two one-half (0.5) occurrences of the numerous occurrences that contributed to her progressive discipline, and ultimately her termination. In fact, Arroyo admits that she punched

---

[14] Arroyo's claim that there is "evidence that the 1 to 3 minute tardiness in reporting to the workstation has no basis in fact" and that "Volvo's Manager of Payroll and Administration admits that the company records do not support such a claim" constitute gross mischaracterizations of the evidence in this case. (Appellant's Br., p. 40). The convoluted deposition examination and responses cited in no way support this conclusion. Rather, the records unequivocally reflect that while the electronic time-punch records reflect that Arroyo punched in early on November 2 and 4, 2011, she was nonetheless in violation of the Shift Start Rule. (Doc. 77-2, pp. 55-56, 58-60, 171-174; Doc. 77-5, pp. 10-11; Doc. 77-6, pp. 88-91, 96-97).

in late to her shift on several occasions and received fractional occurrences as provided for in the attendance policy.[15] (Doc. 77-2, pp. 9-11, 20, 58-60, 62-67).

Arroyo did not receive an occurrence on any day for which she had therapy appointments or took military leave. (Doc. 77-2, p. 13; Doc. 77-5, pp. 4-5, 12; Doc. 77-6, pp. 57-60, 62, 65-68, 60-71; Doc. 79, p. 2-4).

Finally, to the extent that Volvo exercised any subjective judgment in applying its attendance policy, its discretion only benefitted Arroyo. Specifically, the evidence demonstrates that: (1) Schroeder allowed Arroyo to bring in a doctor's note to excuse her October 19, 2010 absence (although Arroyo never provided such a note); (2) Schroeder deviated from the attendance policy in Arroyo's favor when he excused Arroyo's late punch on October 29, 2010, giving her the benefit of the doubt in response to her argument that she was unaware of the elimination of the two-minute grace period; (3) Arroyo's attendance record was updated in September 2011 to excuse her absence on December 23, 2010; and (4) Arroyo punched in after 6:30 p.m. on 11 different Tuesday evenings on which she had PTSD therapy appointments, but earned no occurrences with respect to those days. (Doc. 77-2, pp. 19-23, 72-97; Doc. 77-5, pp. 5, 7, 9, 11, 52; Doc. 77-6, pp. 57-60, 62, 65-68, 60-71, 79-81).

Further, Schroeder met with Arroyo to discuss the need to be prepared to begin work at the shift start bell and that her use of the meditation room prior to her shift

---

[15] Although Arroyo did testify at her deposition that she could not read the punch records for her occurrences on July 29, 2011 and August 19, 2011, a clearer copy of the punch records subsequently produced in discovery clearly validates late punches on those days. (Doc. 77-7, pp. 7-75).

did not negate her responsibility. It was only after Arroyo blatantly ignored his instructions—twice—that she earned the last two one-half (0.5) occurrences that ultimately resulted in her termination. (Doc. 77-2, pp. 55-56, 58-60, 171-174; Doc. 77-5, pp. 10-11; Doc. 77-6, pp. 1-2, 88-91, 96-98).

These facts conclusively foreclose Arroyo's illogical and unsupported argument that Volvo used Arroyo's attendance policy violations as a pretext to hide some animus toward her disability when its own actions indicate a consistent pattern to help Arroyo avoid discipline. Arroyo cannot demonstrate that Volvo's articulated reason for her termination was a pretext for disability discrimination. Further, based on the attendance records of other material handlers, Volvo has shown that it would have made the same decision with respect to Arroyo's employment if she was not disabled.

b. Under USERRA

Discrimination claims under USERRA are governed by the burden-shifting approach of *NLRB v. Transportation Management Corp.*, 462 U.S. 393 (1983). *See, e.g.*, C*rews v. City of Mt. Vernon*, 567 F.3d 860, 868 (7th Cir. 2009). Under the *NLRB* approach, "the employee first has the burden of showing, by a preponderance of the evidence, that his or her protected [military] status was a substantial or motivating factor in the adverse employment action; the employer may then avoid liability by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." *Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 16 (1st Cir. 2007).

Arroyo fails to articulate any specific argument entitling her to reversal of summary judgment as to her USERRA discrimination claim. Instead, she makes various references to USERRA throughout her Appellant's Brief. Plaintiff's USERRA discrimination theory at summary judgment was that her termination for violation of Volvo's Policy in November 2011 was a pretext that Volvo seized upon after spending over six years "looking for a way" to terminate her. (SA30). In support of her argument, she cited to numerous internal email communications between Volvo management and human resources over the years, as if discussing the company's rights and obligations in relation to Arroyo's military leave somehow equates to military animus, which approach is echoed to a degree in her Brief on appeal. (Appellant's Br., p. 42-45).[16] She also claimed that the attendance policy was selectively enforced to her detriment and that Volvo denied her requested accommodations.

As discussed above with respect to Arroyo's disability discrimination claim, the emails referenced by Arroyo reveal both Volvo's interest in keeping apprised of Arroyo's military status and in holding Arroyo accountable for company policies when not on leave. It is undisputed that Volvo never penalized Arroyo for taking military leave. *Cf. Breneisen v. Motorola, Inc.*, 512 F.3d 972, 981-82 (7th Cir. 2008) (concluding that a supervisor's comments that expressed frustration with

---

[16] Arroyo's USERRA claim is time-barred with respect to events which occurred before August 27, 2008, as her original Complaint was filed August 27, 2012. *See Middleton v. City of Chicago*, 578 F.3d 655, 658 (7th Cir. 2009) (holding that USERRA claims are subject to the federal four year statute of limitations set forth in 28 U.S.C. § 1658(a)).

employees' taking leave, but that resulted in no loss of job benefits, were not materially adverse).

Further, critical undisputed evidence negates Arroyo's theory. Arroyo does not dispute (i) that Volvo gave her more than 900 days of military leave during her six and a half year period of employment; (ii) that after her return from her second overseas deployment, Volvo accommodated her request for a modified Friday work schedule prior to drill weekends; and (iii) that she did not receive any occurrences under the Policy for days on which she took military leave. (SA51, 54; Doc. 77-5, pp. 16, 2-4; Doc. 77-2, pp. 13, 24-26).

The record also reflects that in 2009, during her second deployment, Volvo was forced to terminate six material handlers. (Doc. 55, p. 7; Doc. 77-5, p. 3). If Volvo really wanted to terminate Arroyo because of her military status, <u>it would have</u>. Further, as set forth above, Volvo has come forward with undisputed evidence that it similarly penalized other employees for being minutes late to work. D(oc. 77-5, p. 3, 74, 127-128, 131-138, 143-144, 173-174, 208-09).

For these reasons, as well as the reasons discussed above in analyzing Arroyo's disability discrimination claim, Arroyo's USERRA claim fails as she cannot show that her military service was a substantial factor in her discipline—and ultimate termination—under the attendance policy. Volvo has also shown that it would have taken the same action even if Arroyo was not in the military.

### iii. The District Court Properly Granted Summary Judgment as to Each of Arroyo's Retaliation Claims; Summary Judgment Should be Affirmed

### A. USERRA Retaliation

As a threshold matter, Arroyo does not articulate on appeal, nor has she ever alleged, that she engaged in any protected activity under USERRA. In her Complaint, Arroyo identifies three dates on which she engaged in protected activity: May 20, 2011, August 21, 2011, and September 13, 2011. (*Id.*). May 20, 2011 was around the time that Arroyo attempted to sign up to work voluntary Saturday overtime on May 21, 2011. There is no evidence of any protected activity on August 21, 2011; Arroyo requested accommodations for her disability on August 26, 2011 and September 1, 2011. (SA59; Doc. 77-2, p. 31, 37-38, 123-125; Doc. 77-5, p. 13-15; Doc. 77-6, p. 101, 107-108; Doc. 77-7, pp. 3-5, 18-20).

Finally, Arroyo filed a charge of discrimination with the EEOC on September 13, 2011, alleging discrimination and retaliation under the ADA. (SA62; Doc. 77-5, p. 15; Doc. 77-6, pp. 109-110).

Thus, it appears all of her alleged protected activity arises under the ADA rather than USERRA.

Though this was Volvo's position at summary judgment, Arroyo has never rebutted it. (SA30-31; Appellant's Br.). Further, as the District Court correctly found, Arroyo's USERRA retaliation allegations amounted to a contention that "Volvo's management was consistently seeking ways to terminate or discipline Arroyo for exercising her military rights and obligations," which was "essentially

Arroyo's USERRA discrimination claim with no further explanation." (SA 32). Thus, the same standard and analysis discussed with respect to Arroyo's USERRA discrimination claim applies to her retaliation claim, and the same was properly dismissed at summary judgment. *See also* 38 U.S.C. § 4311(b), (c).

B.      ADA Retaliation

To establish a *prima facie* case of retaliation under the ADA, Arroyo must demonstrate that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. *See Talanda v. KFC Nat'l Management Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998). If Arroyo establishes a prima facie case, she must also rebut Volvo's non-discriminatory reasons for the adverse action and establish that a discriminatory motive was the determining factor behind Volvo's decision.[17] *Id.* at 1096.

Yet again, Arroyo fails to set forth any recognizable argument for reversal, making only haphazard references to retaliation in different parts of her Appellant's Brief. Nonetheless, summary judgment was appropriate and should be affirmed for the reasons below.

Arroyo's retaliation claim fails as a matter of law because she cannot demonstrate a causal link between any protected activity and her termination. The temporal distance between her most recent alleged protected activity on September 13, 2011 and her termination (1 month, 3 weeks, and 5 days) is too remote to

---

[17] Accordingly, Volvo's pretext analysis with respect to Arroyo's ADA discrimination claim is incorporated herein by reference.

sustain any inference of a causal link. *See, e.g.*, *EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943, 952-53 (7th Cir. 2001) (holding that six weeks between filing ADA charge and plaintiff's termination is insufficient to establish retaliation). Accordingly, Arroyo's earlier protected activity similarly fails to establish the requisite causal link.

Arroyo's ability to establish a causal link is further negated by the fact that she began to be progressively disciplined under the attendance policy prior to any of her alleged protected activity. (Doc. 77-5, pp. 61-62, 6; Doc. 77-6, pp. 3-7; Doc. 77-2, pp. 64, 100, 182).

That Volvo continued to consistently discipline her for occurrences after her protected activity in no way creates any inference of a causal link between the protected activity and her discipline; Volvo simply continued to enforce its attendance policy, which it had every right to do. *See, e.g.*, *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997) (before plaintiff requested disability accommodation, plaintiff had been disciplined and warned of discharge if his performance did not improve; although discharge followed soon after his accommodation request, temporal proximity alone was not enough to sustain inference of retaliation); *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 359 (7th Cir. 2002) ("[A]n employee's complaint of harassment does not immunize her from being subsequently disciplined or terminated for inappropriate workplace behavior.") (overruled on other grounds).

Finally, Arroyo vaguely alleges that Volvo retaliated against her by "continually refusing" to provide reasonable accommodations and "otherwise harassing" her.[18] (SA 67). Neither of these contentions are supported by any evidence. On the contrary, the evidence shows that Volvo repeatedly accommodated Arroyo and continued to engage in an interactive process with respect to her requests even after Arroyo's most recent protected activity (the filing of the EEOC Charge) until Arroyo stopped the accommodation dialogue. (SA62; Doc. 77-5, p. 15; Doc. 77-6, pp. 109-110; Doc. 77-2, pp. 41-52,138, 140-141, 143, 145-159; Doc. 77-7, pp. 51-54, 56, 58-72, 6-9).

The same can be said for Arroyo's harassment complaint against Schroeder. The incident in which Arroyo alleges that Schroeder harassed her (when Schroeder provided her a copy of the Workplace Violence in response to the handicap parking incident with Tracey Adams) occurred before her numerous accommodation requests on August 26, 2011 and September 1, 2011. (Doc. 77-2, pp. 35-38, 124-125; Doc. 77-5, p. 14-15; Doc. 77-6, pp. 104-105, 107-108; Doc. 77-7, pp. 21-31, 4).

Thereafter, Volvo requested information from Arroyo to begin its investigation— information that Arroyo never provided. (SA62; Doc. 77-6, pp. 109-110; Doc. 77-2, pp. 41-45-52, 138,-140-159; Doc. 77-7, pp. 51-54, 56, 58-72, 5-9).

---

[18] On appeal, Arroyo recites the elements for a hostile work environment claim (Appellant's Br., p. 46), but such citation is misplaced as Arroyo never alleged such a claim in her Complaint.

Far from showing retaliatory intent, this evidence demonstrates Volvo's efforts to help Arroyo after she engaged in protected activity. Accordingly, Arroyo's ADA retaliation claim fails as a matter of law.

> ### iv. The District Court Properly Granted Summary Judgment as to Arroyo's Failure to Accommodate Claim and Summary Judgment Should be Affirmed

In her Complaint, Arroyo identifies four accommodations that she contends were denied, but were actually granted by Volvo: (1) time-off from work so that she could safety travel to and from and adequately perform for military duties; (2) allowing her time to attend her PTSD therapy sessions; (3) allowing her to work overtime on a machine other than the forklift; and (4) allowing her time to put on her protective gear prior to starting her shift. (SA69). As noted by the District Court, Arroyo "does not rebut the fact that numerous accommodations were given to her nor does she address Volvo's arguments with respect to these four accommodations." (SA35). Accordingly, any argument Arroyo raises on appeal with respect to her failure to accommodate claim is waived, as it was not properly raised before the District Court.

For purposes of her appeal, Arroyo appears to rely on a factually inaccurate recitation of her request to make up time in case of her tardiness. (Appellant's Br., p. 26, 38). As a preliminary matter, the District Court also noted that Arroyo did not rely on her request to make up time in case of tardiness as part of her failure to accommodate claim and that, in any event, "the case law [does not] support such a claim." (SA35) (citing *Waggoner*, 169 F.3d 481, 485 (7th Cir. 1999) (employer is not

required to tolerate erratic, unreliable attendance); *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000) (flexible schedule that would allow employee to clock in at whatever time she wanted and make up time at end of shift was not reasonable accommodation)).

Morever, on appeal, Arroyo also confuses the timeline of events and nature of the request she actually made. To clarify, Arroyo never requested use of Volvo's Flexible Work Schedule "whereby she would work longer if she is late in walking to her workstation from the meditation room" (Appellant's Br., p. 38). First, Arroyo made her request to make up time in case of tardiness on September 1, 2011—well prior to when Arroyo started leaving the meditation late after the shift start bell. Accordingly, the issue of Arroyo leaving the meditation room late was not even in play at the time Arroyo made her request. Second, Arroyo's request to make up time in the case of tardiness was not a request covered under the Flexible Work Arrangement Policy. (Doc. 77-7, pp. 43-49). That policy covers, among other things, a "flex time" arrangement where, subject to business needs, an employee works with his or her supervisor to set the work day's starting and ending times that may differ from others in the department. In other words, it is a negotiated, but static, start and end time. (*Id.*)

Arroyo also ignores the numerous accommodations that Volvo granted to her: a modified Friday work schedule for weekend drill duty, time off to attend PTSD appointments using ETO in fractional day increments or having the time excused (including not giving Arroyo any occurrences on evenings she arrived to work late),

an office in which to meditate prior to her shift and during breaks, a mentor, access to the company's wellness program, breaks during panic/anxiety attacks, and the ability to call a support person during panic/anxiety attacks, and use of ear plugs or noise dampening devices in one ear. (SA58 and 59; Doc. 77-2, pp. 33-34, 39-40, 60-62, 130, 135-137, 175, 177; Doc. 77-7, pp. 35, 40-42, 11-17, 82-84, 3-6, 9; Doc. 77-5, p. 11; Doc. 77-6, pp. 57-60, 62, 65-68, 60-71).

Several additional requests were being reviewed by Volvo before Arroyo shut down the interactive process. (*Id.*; SA62; Doc. 77-5, p. 15; Doc. 77-6, pp. 109-110; Doc. 77-2, pp. 41-52,138-140-159; Doc. 77-7, pp. 51-54, 56, 58-72, 6-9).

The evidence includes numerous emails exchanged between Arroyo, Schroeder, and Williams addressing Arroyo's requests and providing updates on which requests were granted and which were still under consideration. (*Id.*). Not only did Arroyo refuse to provide any supporting medical documentation or undergo the requested IME with respect to two of her pending requests (a flexible work schedule to allow make up time in case of tardiness and wearing ear plugs in both ears), she actually asserted *a claim for harassment against Williams* for requesting supporting medical information. (*Id.*)

On these facts, it is indisputable that Arroyo alone shut down the interactive process, which bars her failure to accommodate claim as a matter of law. *See Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1136 (7th Cir. 1996). Accordingly, summary judgment should be affirmed.

v. *The District Court Properly Granted Summary Judgment as to Arroyo's Intentional Infliction of Emotional Distress Claim and Summary Judgment Should be Affirmed*

To establish a claim for intentional infliction of emotional distress under Illinois state law, a plaintiff must show: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Shamim v. Siemens Industry, Inc.*, 854 F.Supp.2d 496, 511 (N.D.Ill. 2012) (quoting *Graham v. Commonwealth Edison Co.*, 318 Ill.App.3d 736, 252 Ill.Dec. 320, 742 N.E.2d 858, 866 (Ill.App.Ct. 1st Dist. 2000)). Courts are particularly reluctant to find extreme and outrageous conduct in the employment context in the absence of "conduct calculated to coerce an employee to do something illegal." W*elsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148, 154, 239 Ill.Dec. 148, 153, 713 N.E.2d 679, 684 (Ill.App.Ct. 1st Dist.1999).

Here, Arroyo submits one paragraph on appeal. (Appellant's Br. 53, 54). There are no allegations, nor is there any evidence, that Volvo engaged in extreme and outrageous behavior. Arroyo's only potential "evidence" consists of internal communications among Volvo employees attempting to determine the Company's obligations under USERRA and the ADA.

Much more egregious cases have been found not to rise to the level of extreme and outrageous. *See, e.g.*, *Stoecklein v. Illinois Tool Works, Inc.*, 589 F.Supp. 139, 146 (N.D.Ill. 1984) (an employer's conduct in demoting and forcing an employee into

retirement because of his age, then reneging on a promise of severance pay and job counseling, was not extreme and outrageous); *Balark v. Ethicon, Inc.*, 575 F.Supp. 1227, 1230-32 (N.D. Ill. 1983) (an employer's refusal to reinstate an employee despite an arbitration award in the employee's favor, together with a baseless referral of the employee's name to the FBI for investigation, was not extreme and outrageous); *Witkowski v. St. Anne's Hosp. of Chicago, Inc.*, 113 Ill.App.3d 745, 69 Ill.Dec. 581, 447 N.E.2d 1016, 1022-23 (Ill.App.Ct. 1983) (an alleged wrongful discharge to prevent a plaintiff from securing long-term disability benefits was not extreme and outrageous).

Accordingly, this claim fails as a matter of law and summary judgment should be affirmed.

## Conclusion

Arroyo's appeal should be dismissed for failure to articulate any argument on appeal or otherwise comply with Federal Rules of Appellate Procedure 28(a)(8)(A) or (a)(9). Arroyo's appeal should also be dismissed, or – alternatively – certain claims, arguments and facts deemed waived, as she failed to raise them at summary judgment and/or on appeal. Finally, summary judgment was appropriate as to each of Arroyo's claims and should be affirmed.

## Statement Concerning Oral Argument

Defendant-Appellee Volvo Group North America, LLC believes that the facts and legal arguments are adequately presented in the Briefs and Record, and that this Court's decisional process will not be significantly aided by oral argument in the instant case. Accordingly, Appellee requests this Court find oral argument unnecessary for this appeal under Rule 34(a)(2) of the Federal Rules of Appellate Procedure.

March 30, 2015                              Respectfully Submitted,


                                           /s/ Falon M. Wrigley
                                           Falon M. Wrigley
                                           William J. McMahon, IV
                                           CONSTAGNY, BROOKS, SMITH
                                             & PROPHETE, LLP
                                           7733 Forsyth Boulevard, Suite 1325
                                           St. Louis, Missouri 63105
                                           (314) 338-3740

                                           *Attorneys for Defendant-Appellee*
                                           *Volvo Group North America, LLC*
                                           *Doing business as Volvo Parts*
                                           *North America*

## Certificate of Compliance

The undersigned certifies that the foregoing Brief of Defendant-Appellee complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,981 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 97-2003 in 12 point Century font.

/s/ Falon M. Wrigley

Falon M. Wrigley
William J. McMahon, IV
CONSTAGNY, BROOKS, SMITH
  & PROPHETE, LLP
7733 Forsyth Boulevard
Suite 1325
St. Louis, Missouri 63105
(314) 338-3740

*Attorneys for Defendant-Appellee*
*Volvo Group North America, LLC*
*Doing business as Volvo Parts*
*North America*

Certificate of Service

I hereby certify that on March 30, 2015, the Brief of Defendant-Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

The following participant in the case is a registered CM/ECF user and will be served by the appellate CM/ECF system:

John P. DeRose
DEROSE & ASSOCIATES
Suite 428
15 Spinning Wheel Road
Hinsdale, IL 60521-0000
Email: john@johnderoselaw.com

/s/ Falon M. Wrigley

Falon M. Wrigley
William J. McMahon, IV
CONSTAGNY, BROOKS, SMITH
   & PROPHETE, LLP
7733 Forsyth Boulevard
Suite 1325
St. Louis, Missouri 63105
(314) 338-3740

*Attorneys for Defendant-Appellee*
*Volvo Group North America, LLC*
*Doing business as Volvo Parts*
*North America*