**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

LuzMaria Arroyo,

Plaintiff-Appellant,

v.

Volvo Group North America, LLC,

Defendant-Appellee.

Appeal from a Judgment of the District Court for the
Northern District of Illinois, Eastern Division
Case No. 12 C 06859
Honorable Robert M. Dow, Jr., Judge Presiding

**REPLY BRIEF OF PLAINTIFF-APPELLANT**
**LUZMARIA ARROYO**

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com

**Oral Argument Requested**

# TABLE OF CONTENTS

**Page No.**

TABLE OF CONTENTS................................................................i

TABLE OF AUTHORITIES.......................................................iv

Cases Cited.........................................................................iv

Statutes Cited.......................................................................v

I. Volvo Feigns a Lack of Understanding of Arroyo's Assertion of How
   The Court Below Erred and the Importance of the Emails .............................1

   A. Plaintiff's Local Rule 56.1 Statement Is Replete with Facts
      Setting Forth Issues to Be Decided by a Jury...........................................2

   B. Volvo Steadfastly Ignores Its Management's Emails
      Although Arroyo Specifically Directs Attention to Them.............................2

      1. The Specific Email Discriminatory and Retaliatory
         Remarks and Comments......................................................................3

   C. Volvo Ignores Its Management's Email Comments
      Because It Has No Answer to Them..........................................................7

   D. It Is a Jury Question and Not for the Trial Court Below
      To Draw Conclusions about the Emails.....................................................8

      1. Volvo Management's "Perceptions and Feelings" Belied in Emails
         about Arroyo's Absence from the Workplace Responding to
         Military Orders and Seeking the Protections of USERRA.........................9

      2. Volvo's Expressed Hostility toward Arroyo with Knowledge that
         She is Complying with Military Orders and Protected by USERRA ..........10

II. USERRA Supersedes Other Law When Most Beneficial
    to the Service Member...............................................................................11

A. Volvo "Grants" and "Gives" Arroyo Nothing Not Required and
Compelled by USERRA...........................................................................12

B. The Burden of Proof on Volvo under USERRA to Show Compliance
with the Law And Freedom from Discrimination.....................................12

C. Arroyo Engages in "Protected Activity" When She Seeks Rights
under USERRA and ADA.......................................................................13

III. Volvo's Proffered Reasons for Termination Raise Genuine Fact Issues............14

A. Volvo's Burden to Articulate a Nondiscriminatory, Believable
Reason for Arroyo's Termination...........................................................14

B. The Grudging Concession by Volvo about the Exchange of Emails..............15

C. The Emails Exchanged among the Volvo Management Team
Expose Their Own "Perceptions and Feelings"........................................16

1. The Cat's Paw Theory of Liability among Members
of Volvo's Management Team.............................................................16

D. No Other Volvo Employee Even Begins to Be Similarly Situated................17

1. Volvo's Disingenuous Comparison of Arroyo to
an Employee with "Erratic, Unexplained Absences".............................18

2. Volvo's Repeated Attempts to Investigate and Discipline
Arroyo for Her Absence from the Workplace in Response
to Military Orders...........................................................................18

3. Volvo's Spreadsheet Computations Ineffectual For Terminating Arroyo
after 5 Years of Military Service........................................................19

E. USERRA Requirement That Volvo Show Cause for Terminating Arroyo....21

1. Volvo's Official Time Records Show Arroyo Is Not Tardy
on the Dates Claimed by Volvo.........................................................21

    a. No Other Volvo Employee Ever Terminated for Violating
       the Start Rule After Punching in on Time……………………………21

    b. Because of Her Military Leave, Arroyo is Only Volvo
       Employee Subject to Longer than Six Month Rolling
       Time Period Used to Assess Discipline…………………………………22

  F. Arroyo Complaining of Violation of Her Rights and Seeking
    the Assistance of ESGR Throughout Her Employment at Volvo……………23

    1. Schroeder Denies Arroyo the Flexible Work Schedule
      That Would Have Cost Volvo Nothing……………………………………24

    2. Schroeder Claims He Terminated Arroyo For
      Violation of Volvo's Attendance Policy and For No Other Reason…………25

IV. USERRA Is Not a Fee Shifting Statute and There Is
    No Subject Matter Jurisdiction to Award Costs…………………………………26

V. Conclusion……………………………………………………………………..…27

CIRCUIT RULE 30(d) STATEMENT……………………………………………...27

CERTIFICATE OF COMPLIANCE…………………………………………….....28

CERTIFICATE OF SERVICE…………………………………………………………29

# TABLE OF AUTHORITIES

**Cases Cited**                                                                                 **Page(s)**

*Ashman v. Burrows*, 438 F.3d 781, 784 (7th Cir.2006).........................................2

*Hutchens v. Chicago Board of Education and Amanda Rivera*,
---F.3d---, No. 13-3648, at 17 (7th Cir.2015)....................................................17

*Insurance Corp. of Ireland, Ltd.*, 456 U.S. 694, 702,
102 S.Ct. 2099, 2104 (1982).............................................................................26

*Leisek v. Brightwood Corporation*, 278 F 3d 895, 900 (9th Cir. 2002)...................10

*Levin v. Attorney Registration and Disciplinary Comm'n of the
Supreme Court of Ill.*, 74 F.3d 763 (7th Cir.1996).......................................26, 27

*Lott v. Pfizer, Inc.*, 492 F.3d 789, 792 (7th Cir.2007).......................................27

*Maxfield v. Cintas Corporation No.2*, 427 F. 3d 544, 551-3 (8th Cir. 2005)...........10

*Scaccianoce v. Hixon Mfg. & Supply Co.*, 57 F.3d 582, 585 (7th Cir.1995)...........26

*Smith v. Bray*, 681 F.3d 888, 897 (7th Cir.2012)..............................................16

*Staub v. Proctor Hosp.*, 562 U.S. 411, 131 S.Ct. 1186, 1191,
179 L.Ed.2d 144 (2011)...................................................................................16

*Taylor-Novotny v. Health Alliance Medical Plans, Inc.*,
772 F. 3d 478, 495 (7th Cir. 2014).................................................................10

*Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 365 (7th Cir.2000)....................27

**Statutes Cited:** Page(s)

38 U.S.C.A. § 4301(a)(1) to (3)......................................................14

38 U.S.C.A. § 4302(a) and (b)......................................................11

38 U.S.C.A. § 4311(b)......................................................12

38 U.S.C.A. § 4311(c)......................................................12

38 U.S.C.A. §4312 (c)(3)......................................................20

38 U.S.C.A. §4312(c)(4)(B) to (D)......................................................20

38 U.S.C.A. § 4313(a)(4)......................................................21

38 U.S.C.A. § 4316(c)......................................................21

Local Rule 56.1(b)(3)(B)......................................................2


**Other Materials Cited** Page(s)

The *Merriam Webster Dictionary* ......................................................12

## I. Volvo Feigns a Lack of Understanding

## Of Arroyo's Assertion of How the Court Below Erred
## And the Importance of the Emails

Volvo scrupulously argues that " Arroyo's appeal should be dismissed as at no point in her Appellant's Brief does she clearly articulate how or why she believes the District Court erred as a matter of law, or assert how the alleged error(s) impacted the District Court's decision as to each of her claims."[1] Volvo further argues that "Arroyo has not even come close to clearly articulating how or why the District Court erred."[2]  Fully cognizant of the emails in this case, and feigning a lack of understanding of the importance of them, Volvo cannot be made to look at what is clearly written.

Arroyo clearly wrote[3] that "the court below failed to resolve inferences in Arroyo's favor" when it concluded:

> The emails referenced in the parties' fact statements demonstrate an awareness of Plaintiff's rights as an active service member, as well as discussions about the company's rights and obligations in relation to Arroyo's military leave and PTSD, not discrimination.  The emails evince efforts on the part of Volvo to ensure that its employees were aware of Arroyo's rights and sensitive to her military leave requests; to work with Arroyo to make sure that she was providing military orders and that her excused absences were properly considered as such; to allow her to attend her therapy appointments for her PTSD; and also to provide several requested accommodations while Arroyo worked at the Distribution Center.  At best, the emails reveal Volvo's interest in keeping abreast of Arroyo's military status and not running afoul of USERRA and the ADA, while holding

---

[1] Appellee's Brief, p. 26.
[2] Appellee's Brief, p. 28.
[3] Appellant's Brief, pp. 29-31.

> Arroyo accountable for company policies when she was
> not on leave.

It is decidedly not the role of the trial judge in ruling on a summary judgment motion to make credibility determinations and weigh evidence adversely to Arroyo. "[S]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." See *Ashman v. Burrows*, 438 F.3d 781, 784 (7th Cir.2006).

## A. Plaintiff's Local Rule 56.1 Statement Is Replete with Facts Setting Forth Issues to Be Decided by a Jury

Contrary to Volvo's assertion,[4] Plaintiff's Local Rule 56.1(b)(3)(B) Statement of Undisputed Material Facts[5] includes facts and supporting references to the record setting forth factual circumstances where the Volvo Management Team exhibits hostility toward Arroyo, subjects her to a hostile work environment and heightened scrutiny, considers terminating her during and after each deployment, levels unwarranted discipline against her, and ultimately terminates her in violation of USERRA and the ADA.

## B. Volvo Steadfastly Ignores Its Management's Emails Although Arroyo Specifically Directs Attention to Them

Volvo continues to ignore the specific emails to which its attention was drawn when Arroyo responded to its motion for summary judgment and argues that "Arroyo has impermissibly included additional facts not included in that statement

---

[4] Appellee's Brief, p. 30.
[5] See Doc. #79, PSOF ¶¶6, 7, 10, 13, 15, 16, 18, 19, 21 through 25, and 27 through 36.

and also raised additional legal arguments for the first time on appeal."[6]  Lest there be any doubt, Arroyo again points out the specific remarks and comments made by Volvo Management throughout her employment and up to the very date of her termination. These discriminatory and retaliatory remarks are made when and because Arroyo is absent from the workplace in compliance with her military orders and/or seeks her rights under USERRA and ADA.  Confined by a 15 page limit in responding to Volvo's motion for summary judgment, Arroyo raised the arguments before the Court below that are being considered on this appeal.

### 1.  The Specific Email
### Discriminatory and Retaliatory Remarks and Comments

The specific emails which were brought to the attention of the Court below and Volvo include, among others, the following email communications among members of the Volvo Management Team:

(a) When Arroyo seeks appropriate time for travel and rest to and from her military training, HR Director Bruce Olin incorrectly advises:

> We do not have to give extra time for her travel to and
> from her weekend duty. She does have the option to
> transfer to a closer unit, we cannot make her transfer.

(Doc. 78-3, p. 31).

(b) Schroeder and Temko seek advice as to how to investigate and discipline Arroyo:

> Would it [be] appropriate to contact her unit to inquire
> about her deployment status? If not, what are our rights

---

> and her responsibility in keeping us informed of her
> deployment status?

(Doc. 78-3, p. 38).

(c) HR Director Olin advises Schroeder and Temko that under USERRA:

> Unfortunately, there isn't a lot we can do... All she has to
> do is to inform us within six months of her release. Per
> the law we have to wait for her. Sorry it isn't what you
> wanted to hear.

(Doc. 78-3, p. 39).

(d) Schroeder considers terminating Arroyo in November 2008:

> LuzMaria has a verbal warning waiting for her when she
> finally comes back. If we were to give her occurrences for
> Thursday, Nov. 13 & Tuesday, Nov. 18 this would put her
> at a 3 Day Suspension for her attendance. If we were to,
> also, give her an occurrence for Wednesday, Nov. 12 this
> would bring her to Termination for her attendance.

(Doc. 78-4 p. 11, 10, 15).

(e) Olin discovers a way to discipline Arroyo for her absence from Volvo in

compliance with her military orders:

> Keith, just an FYI. This is part of the law which allows
> her to take the military leave. The last paragraph is our
> "out" to hold her to other policies.

(Doc. 78-4, p. 14).

(f) Schroeder is stopped by Olin from disciplining Arroyo and giving her a

CAP for being 1 minute late:

> The only issue I have concern [about] is the last tardy of
> one minute.... I understand we enforce the rules
> completely and non-discriminatorily, but I can see some
> outsider having a different view of this.

(Doc. 78-4, p. 59).

(g) When Arroyo shares a copy of "the law", Supervisor Sherrie Jankowski

mockingly tells Schroeder:

> She is really becoming a pain with all of this. She wanted
> me to read this, but I told her I did not have the time
> right now! Enjoy the reading… it's only 24 pages!!!!!

(Doc. 78-5, p. 17).

(h) Despite Arroyo having confided in him that she self-admitted to the

hospital emergency room, Schroeder considers giving her discipline for not being in

attendance at work from December 23 through December 30, 2010:

> [U]nder our attendance policy on 12.29 LuzMaria would
> be issued Step 2 Formal Written CAP and on 12.30 Step
> 3, 3 Day Suspension.
>
> At this time, I am not aware of any rule or guideline in
> our corporate "Military" policy that would excuse these
> days. Additionally, LuzMaria is awaiting our decision on
> the ESGR - Military federal policy rule.

(Doc. 78-5, p. 48).

(i) While she is in the hospital and within a month before Arroyo is diagnosed

with PTSD, Volvo supervisors and employees gossip that Arroyo is on a vacation in

Hawaii:

> … There are several rumors for her not being here: 1. She
> fell and hurt herself and is on A&S. 2. She's on workers
> comp. 3. She's on vacation in Hawaii. (This sounded far
> fetched until I realized that she is on vacation next week
> too!)

(Doc. 78-5, p. 49).

(j) By May 2011 after Arroyo confronts him about discriminating against her because of her PTSD disability, Schroeder writes to all his supervisors:

> Due to the ongoing job issues and concerns with LuzMaria
> Arroyo, I strongly urge you to have a witness whenever
> you have a conversation with this employee.

(Doc. 78-5, p. 65).

(k) When dealing with Arroyo, HR Representative Regina Williams advises Schroeder:

> We are dealing with an exception in her case. We could be
> in violation of ADA.

(Doc. 78-6, p. 3).

(l) VP Sholl alerts Schroeder concerning the complaint he has received from Arroyo about "an hour earlier" and tells him not to worry about any investigation:

> Keith,
> As you read the response to LuzMarie please do not be
> concerned about the investigation Regina will perform. It
> is the only response we could make as we have an
> employee who has filed a complaint so as you know we are
> obligated to investigate. If you wish to talk tomorrow call
> my cell.

(Doc. 78-6, p. 35).

(m) Less than a week before terminating Arroyo and just before promulgating a new rule prohibiting parking in the rear of the building, Schroeder sends to all his supervisors an email prominently marked "Do Not Print-Read and Delete":

> …While I have agreement from Sholl, HR, and legal that
> no employees should be allowed to park in south end of
> the building, we are well aware that on rare occasions
> both management and 2nd shift clerical have parked
> there in the last year.

...
So, Miss Arroyo is likely well aware of this and to avoid a charge of retaliation I must first review this with legal. We cannot afford a circumstance where it is perceived that I am singling out Miss Arroyo when others in this facility have on occasion been allowed to do this.

(Doc. 78-6, p. 49).

(n) Arroyo questions Schroeder's new parking rules:

Ms. Arroyo['s] response to the meeting was "I hear what you are saying." After the meeting, Ms. Arroyo returned to the office and made an inquiry. "Are all of the employees aware of the parking rule or am I singled out on this?["]. My reply was that management is aware of this rule yet the hourly group is not yet. I plan to communicate this rule to all. Attached is the statement I plan to post.

(Doc. 78-6, p. 57).

(o) On the very date of her termination, Schroeder complains to VP Scholl and HR representative, Williams because Arroyo involves ESGR and refuses to compromise with Volvo as she insists on her rights under USERRA and ADA:

... Also of importance is the fact that never once has Ms. Arroyo cooperated or offered any compromise or leniency to the company in any situation unless we agreed to her terms. The best example of this is the ESGR case.

(Doc. 82-3, pp. 70-71 [Schroeder Dep., pp. 273:2 to 274:14]).

## C. Volvo Ignores Its Management's Email Comments Because It Has No Answer to Them

Volvo's indignation that "Arroyo blatantly attempts" to make reference to Schroeder's email on the date of her termination is quite insincere.[7] Of course,

_____

[7] Appellee's Brief, p. 30.

Arroyo's counsel already admitted that he neglected to put that very last email before the Court below, but the statement by Volvo that "Schroeder's testimony cannot even be given proper context and Volvo had no opportunity to respond to the same before the District Court"[8] is disingenuous. Volvo does not now have and never has had a response to the Schroeder remark about "the ESGR case". He just acknowledged making the statement in his deposition when it was shown to him. No one is depriving, or has ever deprived, Volvo of the chance to answer or explain the remarks in the emails Schroeder and the other members of Volvo's management team have made throughout Arroyo's employment and particularly within the last 2 weeks before Schroeder terminated her. All those other emails were specifically called to the attention of Volvo and the Court below. It is respectfully suggested that there can be no reasonable, persuasive response to dispute any of these repeated statements of obvious discriminatory and retaliatory intent throughout Arroyo's employment at Volvo and within days of her termination.

### D. It Is a Jury Question and Not for the Court Below To Draw Conclusions about the Emails

Volvo offers that the "District Court did not make credibility determinations, make inferences in Volvo's favor, or determine its motives and intent. Rather, it chose not to give credence to Arroyo's speculative and wildly-imagined theories based solely on her 'perceptions' and 'feelings.'"[9]

---

[8] Appellee's Brief, p. 31.
[9] Appellees Brief, p. 33.

To the contrary, Volvo's argument suffers from the same infirmity as the opinion by the Court below. Both fail to acknowledge that the emails show much more than merely Volvo's attempt to comply with the law. Arroyo submitted the emails cited in Appellant's Brief to the Court below, highlighted and commented on important remarks made in those emails and showed how a trier of fact could reasonably conclude that the members of the Volvo Management Team demonstrate a lack of compliance with their obligations under USERRA and ADA. The emails show that the Volvo Management Team harbors an actual hostility toward Arroyo when she is absent from the workplace complying with military orders for training, overseas deployment, group therapy for PTSD at the VA hospital, or attempts to share information from ESGR concerning how to deal with a returning service member trying to reintegrate into the work force.

### 1. Volvo Management's "Perceptions and Feelings" Belied in Emails about Arroyo's Absence from the Workplace Responding to Military Orders and Seeking the Protections of USERRA

Contrary to Volvo's assertion, it is the "perceptions and feelings" of members of the Volvo Management Team that are belied in their emails about Arroyo that ought to be exposed to jury examination and deliberation. Volvo's utter disregard for the dictates of USERRA and the discrimination, mockery, and heightened scrutiny by the Volvo Management Team visited on its only employee subject to military orders is amply displayed in the emails. Arroyo continues to stress the importance of all the emails written by and among Volvo Management without her knowledge.

Those emails create "a convincing mosaic" that, when looking at the context of the record as a whole, show clearly that Volvo subjected her to unfair discipline and retaliation. As Arroyo is vocalizing her rights, filing for outside mediation, and requesting accommodations for her disability, Volvo Management continually creates new rules and policies and begins enforcing them discriminatorily in an attempt to have an "out" to hold her to their policies. (Doc. #78-4, p.14). "Significant, unexplained or systemic deviations from established policies or practices can no doubt be relative and probative circumstantial evidence of discriminatory intent." See *Taylor-Novotny v. Health Alliance Medical Plans, Inc.*, 772 F. 3d 478, 495 (7th Cir. 2014).

### 2. Volvo's Expressed Hostility toward Arroyo with Knowledge That She Is Complying with Military Orders and Protected by USERRA

USERRA discrimination claims resemble traditional Title VII retaliation claims in that a discriminatory motivation by the employer is often inferred from proximity in time between the employee's military activity and the adverse employment action, expressed hostility toward the service member, and disparate treatment of similarly situated employees. See *Maxfield v. Cintas Corporation No.2*, 427 F. 3d 544, 551-3 (8th Cir. 2005) and *Leisek v. Brightwood Corporation*, 278 F 3d 895, 900 (9th Cir. 2002):

> Under USERRA, discriminatory motivation of the employer may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between proffered reason and other actions of the employer, an employer's expressed hostility

towards members protected by the statute together with
knowledge of the employee's military activity, and
disparate treatment of certain employees compared to
other employees with similar work records or offenses.

Arroyo is discriminated against when Volvo discusses her military service
and considers discipline and denial of her retention rights in employment, when it
discusses and complains about her seeking assistance from ESGR, HRSC (sic), and
EEOC to enforce her rights. Volvo further discriminates against Arroyo when it
discusses and complains about her military mandated PTSD group therapy and
when it terminates her for being 2 minutes tardy in walking to her workstation
after she has clocked into the company 30 minutes early to use an agreed upon
meditation room to relieve her PTSD symptoms before work. The many emails
demonstrate Volvo Management's repeated discussions of Arroyo's military service
and disciplinary action up to termination. By doing so, Arroyo's protected status
and activities are motivating factor in Volvo's actions.

## II. USERRA Supersedes Other Law
## When Most Beneficial to the Service Member

USERRA supersedes and is the standard used for proving discrimination,
retaliation and harassment of service members in the workplace. Congress made it
very clear that USERRA was to supersede "any State law...policy, plan, practice, or
other matter, that reduces, limits, or eliminates in any manner any right or benefit
provided by this chapter, including the establishment of additional prerequisites to
the exercise of any such right or the receipt of any such benefit provided to such
person…".  See 38 U.S.C.A. § 4302(a) and (b).

## A. Volvo "Grants" and "Gives" Arroyo Nothing
## Not Required and Compelled by USERRA

throughout its response brief, Volvo boasts that it "granted over 900 days of military leave"[10] to Arroyo, her "work schedule modified throughout her employment to accommodate military drill weekends"[11] , "accommodated Arroyo's request by changing her Friday schedule to 4:30 to 7:00, and allowed Arroyo to take 5.5 hours of excused military leave"[12], "granted military leave from May 31 to July 8, 2011"[13], "granted leave for a second set of PTSD therapy appointments from July through October 2011"[14].  In spite of those repeated and incessant boasts, Volvo "grants" Arroyo nothing. The *Merriam Webster Dictionary* defines "grant" as "to agree to do, give, or allow (something asked for or hoped for)".  Volvo does not "give" Arroyo anything. Volvo is not being asked to "agree" or "allow" anything. The Company is compelled by law not to interfere with Arroyo's compliance with her military orders and obligations.

## B. The Burden of Proof on Volvo under USERRA
## To Show Compliance with the Law
## And Freedom from Discrimination

The standard of proof of discrimination is different under USERRA than it is in other employment law cases. The burden of proof is on Volvo, the employer to prove that its treatment of Arroyo has been free from discrimination and in compliance with the law.

---

[10] Appellee's Brief, p. 4.
[11] Appellee's Brief, p. 5.
[12] Appellee's Brief, p. 6.
[13] Appellee's Brief, p.14.
[14] Appellee's Brief, p.14.

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, … or (4) has exercised a right provided for in this chapter.

38 U.S.C.A. § 4311(b).

> An employer shall be considered to have engaged in actions prohibited-
> (1) under subsection (a), if the person's membership...or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership...or obligation for service

38 U.S.C.A. § 4311(c).

### C. Arroyo Engages in "Protected Activity" When She Seeks Rights under USERRA and ADA

USERRA supersedes other law when it is more advantageous to the soldier to do so. The law is written to give the benefit of doubt to Arroyo, the service member. Volvo seeks to hold Arroyo to the standard of discrimination under the ADA which specifies a requirement that she engages in protected activities.

Unbelievably, Volvo alleges that "Arroyo does not articulate on appeal, nor has she ever alleged, that she engaged in any protected activity under USERRA."[15] Contrary to Volvo's assertion, Arroyo is engaged in protected activity under USERRA not only when she answers the call to duty for training, overseas deployment, and goes to mandatory group therapy for PTSD, but also when she

---

[15] Appellee's Brief, p. 45.

engages ESGR to advocate for her rights under USERRA. Retaliation against her for doing so is against the law.

By being a service member obligated to perform military service, Arroyo is in a protected group, engaged in a protected activity. Abiding by military orders issued for whatever purposes requires Arroyo to leave her place of employment at Volvo.

### III. Volvo's Proffered Reasons for Termination
### Raise Genuine Fact Issues

The highly contested facts brought to the attention of the Court below, susceptible to more than one interpretation, raise genuine issues that ought to be reviewed and deliberated upon by a jury. If any of these issues are resolved in favor of Arroyo by a jury, then Volvo engaged in discrimination due to obligations imposed on her as a service member or in the performance of her military duty.

### A. Volvo's Burden to Articulate a Nondiscriminatory,
### Believable Reason for Arroyo's Termination

The sense of Congress in passing USERRA is "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers in employment, which can result from such service" and "to prohibit discrimination against persons because of their service in the uniformed services". See 38 U.S.C.A. § 4301(1) to (3).   Surely a corollary of this encouragement to eliminate or minimize the disadvantages to noncareer service members in employment would be that employers cooperate with their service members returning from overseas deployment in a militarized zone and suffering from PTSD.

Volvo's company policies mustn't interfere in any way with Arroyo's service obligations pursuant to her military orders. But as the emails show, Schroeder, Temko, Olin, and Williams at every turn seek ways not only to interfere with Arroyo service obligations pursuant to military orders, but also regularly contemplate discipline and termination of her as she vocalizes her rights, files for outside mediation, and requests accommodations for her disability.

### B. The Grudging Concession by Volvo About the Exchange of Emails

Early on in its Appellee Brief, Volvo acknowledges that "Volvo management and human resources exchanged emails throughout Arroyo's employment discussing the company's rights and obligations in relation to Arroyo's military leave…"[16] , although it contends that the emails were exchanged "in spite of-- not because of-- Arroyo's military status."[17]  Since Arroyo was Volvo's only employee subject to military orders, it is reasonable to conclude that but for her military status Volvo's Management Team and Human Resources wouldn't have any cause to ever discuss her <u>by name</u> in conjunction with "the company's rights and obligations" to an employee subject to military orders.

Volvo continues feigning confusion and professes "[i]t is entirely unclear in many instances what claim Arroyo is discussing or even how certain factual allegations apply to a given claim."[18]  Nevertheless, Volvo serendipitously undertakes a review of the emails.

---

[16] Appellee's Brief, p.7.
[17] Appellee's Brief, p.7
[18] Appellee's Brief, pp. 32-33.

### C. The Emails Exchanged among the Volvo Management Team
### Expose Their Own "Perceptions and Feelings"

Volvo claims that the facts Arroyo offers in opposition to summary judgment are simply "Arroyo's assertion of unpleasantry" and "Arroyo's speculative and wildly-imagined theories based solely on her 'perceptions' and 'feelings.'"[19] Unbeknownst to Arroyo, at the time most of the emails are authored and shared among Volvo management personnel, she has absolutely no knowledge of their very existence, let alone their content. She could hardly have any perceptions or feelings about emails she does not even know exist. To the contrary, the emails show very clearly the hostility of Volvo management personnel toward Arroyo and their attempts to discipline her because and when she is complying with military orders throughout her employment.

### 1. The Cat's Paw Theory of Liability
### Among Members of Volvo's Management Team

"The attendance policy is administered jointly by Temko and Schroeder. Temko is responsible for documenting any occurrences for each employee on an Excel spreadsheet after reviewing the time punch records. Temko and Schroeder are then responsible for administering disciplinary steps under the policy."[20]

The "cat's paw theory of liability" can be imposed upon Volvo for the improperly motivated recommendations by management subordinates to discipline and terminate Arroyo. See *Staub v. Proctor Hosp.*, 562 U.S. 411, 131 S.Ct. 1186, 1191, 179 L.Ed.2d 144 (2011) and *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir.2012).

---

[19] Appellee's Brief, p. 33.
[20] Appellee's Brief, p. 8.

The cat's paw theory was very recently invoked by the Seventh Circuit Court of Appeals in reversing a grant of summary judgment.  In *Hutchens v. Chicago Board of Education and Amanda Rivera*, ---F.3d--- No. 13-3648, (7th Cir.2015), the court noted:

> …A reasonable jury could choose among several possible motives when weighing evidence for and against alleged discrimination). The district judge himself, by emphasizing his belief that the defendants' witnesses had been "honest," implied correctly that if they were liars a reasonable jury could conclude that Hutchens' race had been a decisive factor in the decision to prefer Glowacki over her. But these are factual issues for a jury to resolve.

*Id.*, at 17.

It is for the jury to decide the motives for the employment decisions made by the decision-makers for management Schroeder and Williams, the acquiescence in the decision to terminate by Volvo higher-ups like VP Scholl and HR Director Olin, and the imput from subordinates like Temko and Jankowski.

### D. No Other Volvo Employee Even Begins to Be Similarly Situated

The statement by Volvo that "the undisputed evidence shows Volvo treated similarly-situated employees the same" is completely lacking in candor under the circumstances of this case.[21] Volvo's claim of non-disparate treatment of Arroyo based on similar discipline of similarly situated employees is ludicrous. Volvo admits that no other employee is an active Army Reserve member, an incredible admission for a company that employs over 500,000 persons nationwide. Even more

---

[21] Appellee Brief, p. 38.

important, Arroyo is Volvo's only employee who is also a service member who is suffering from PTSD. And, of course, no other Volvo employee needs or has the accommodation of the meditation room before starting work, an accommodation that was openly frustrated by Schroeder, changing the rules just days before Arroyo's termination.

### 1. Volvo's Disingenuous Comparison of Arroyo to an Employee with "Erratic, Unexplained Absences"

The reference by Volvo to "an employee with 'erratic, unexplained absences' is not a qualified individual with a disability for purposes of the ADA"[22], under the circumstances of this case, is insincere. Arroyo has never been accused of "erratic, unexplained absences".  Arroyo does not need to "explain" anything about her absences to Volvo Management who knew exactly where she was on work days. Her attendance at work is never erratic. When she is absent from the workplace, it is in response to military orders.  On the days she receives "occurrences" just prior to her termination, Arroyo was leaving the agreed upon meditation room on Volvo's premises. Over the 5 years of her employment, Volvo management never accuses her of excessive absences.

### 2. Volvo's Repeated Attempts to Investigate and Discipline Arroyo for Her Absence from the Workplace In Response to Military Orders

The attempts by Schroeder and Temko to investigate Arroyo's deployment status and their expressions of frustration demonstrate their complete lack of cooperation with their employee subject to military orders. They contemplate

---

[22] Appellee's Brief, p. 37.

discipline of Arroyo and have it completely backwards when they ask, "What are our rights and her responsibility in keeping us informed of her deployment status?" (Doc. 78-3, p. 38).

Arroyo has absolutely no responsibility to keep Volvo advised of anything while complying with orders in the war zones of Iraq and Kuwait. The apologetic response from HR Director Olin because Volvo must comply with the dictates of USERRA is even more telling:

> Unfortunately, there isn't a lot we can do… All she has to do is to inform us within six months of her release. Per the law we have to wait for her. Sorry it isn't what you wanted to hear.

(Doc. 78-3, p. 39).

### 3. Volvo's Spreadsheet Computations Ineffectual
### For Terminating Arroyo after 5 Years of Military Service

In an early email to Schroeder and Temko, HR Director Olin demonstrates that he understands full well that "an individual may be absent from work for military duty and retain reemployment rights for 5 years". But in the same email, Olin also advises them that "USERRA provides enhanced protection for disabled veterans, requiring employers to make reasonable efforts to accommodate the disability." (Doc. #78-3, p. 40-41).

The spreadsheets of Arroyo's military service Temko keeps carefully record the fact that "Arroyo is granted over 900 days of military leave" and the email from Olin shows a deliberate unwillingness to comply with the dictates of USERRA, which is being repeatedly explained to Volvo by ESGR.

Under USERRA, Arroyo's wartime emergency activation for overseas deployment to Iraq should not even be considered. The calculation of the five-year period limit on the protection of reemployment rights does not apply to Arroyo's absence from Volvo's workplace on her overseas deployment because she was ordered to active duty pursuant to Presidential Orders during wartime.

> [A]ny such period of service shall not include any service… performed by a member of a uniformed service who is…(B) ordered to or retained on active duty (other than for training) under any provision of law because of a war or national emergency declared by the President or the Congress. as determined by the Secretary concerned; (C) ordered to active duty (other than for training) in support, as determined by the Secretary concerned, of an operational mission for which personnel have been ordered to active duty under section 12304 of title 10; (D) ordered to active duty in support, as determined by the Secretary concerned, of a critical mission or requirement of the uniformed services;…

38 U.S.C.A. §4312(c)(4)(B) to (D).

Although Volvo continuously stresses throughout its Brief the "900 days of military leave granted" to Arroyo, her protected activity includes drill weekends as well as Annual Training (AT) and Active Duty for Training (ADT) orders. Arroyo's orders for training like Mission Unit Training Assessment (MUTA) reserve weekend training, Annual Training (AT), and Active Duty for Training (ADT ) are exceptions from the five-year limitation on the protection of Arroyo's reemployment rights as well.  See 38 U.S.C.A. §4312 (c)(3).  Arroyo always gives to Volvo Management a copy of any orders covering her Reserve Weekends as they became available or were

updated. (Doc. #78-4, pp. 1-7; Doc. #82-2 pp. 27, 29 [Temko Dep. 98:13 to 100:10 and 106:23 to 108:2]).

## E. USERRA Requirement That Volvo
## Show Cause for Terminating Arroyo

Under USERRA, once Arroyo becomes reemployed after her return from military service, Volvo can only discharge her from its employ for cause. See 38 U.S.C.A. § 4316(c).

### 1. Volvo's Official Time Records Show
### Arroyo Is Not Tardy on the Dates Claimed by Volvo

Maureen Somersett, Volvo's Manager of Payroll and Administration admits that she was never asked to make spread sheets for any other employee except Arroyo. (Doc. 82-5, pp. 8-9; p. 36, 45 [Somersett Dep., pp. 24:24 to 29:1, 134:13 to 137:17, 170:14 to 172:8]).

#### a. No Other Volvo Employee Ever Terminated
#### For Violating the Start Rule after Punching in on Time

During the 13 years of her employment with Volvo, Somersett admits that she could not recall any other employee who was terminated for being tardy 1 minute. Upon comparing Arroyo's punch cards to the spreadsheets, Somersett admits that Arroyo actually punched in more than one half hour early and was not tardy on the dates indicated and claimed by Volvo. (Doc. #78-7, pp. 17-18, 24-26; Doc. #77-2, p. 248; Doc. #82-5, pp. 50-52 [Somersett Dep., pp. 192:18 to 193:22 and 194:14 to 201:1]). A review of the spreadsheets and time records submitted by Volvo is most telling. As reflected in Volvo's official electronically time-punched records, no Volvo employee other than Arroyo has ever been disciplined for violating

the Start Time Rule after punching in on time, let alone 30 minutes early. (Doc. #77-5, p. 53 through Doc. #77-6, p.75).

**b. Because of Her Military Leave,**
**Arroyo is Only Volvo Employee Subject to Longer than**
**Six Month Rolling Time Period Used to Assess Discipline**

When Schroeder revises the attendance policy for the Chicago plant in 2009, absences other than earned time off (ETO), vacation weeks, and scheduled holidays were not counted towards the Six Month Rolling Time Period. (Doc. # 77-5, p. 41). Because Arroyo is the only employee subject to military orders and accumulated absences for Military Leave, A&S and FMLA, she is the only employee who is disciplined and measured against a longer rolling time period. Schroeder's revision of the Chicago plant Attendance Policy is tailored for Arroyo only and used to create a pretextual reason for her termination.

Although the policy requires a four week and six-month look back period from the date of the most recent occurrence to determine if an employee has enough occurrences to receive a step in the progressive discipline process, Schroeder reviews almost a full year of Arroyo's time records. (Doc. # 77-5, p. 4, Schroeder Affidavit, ¶ 6; Doc. #77-6 pp. 79-80). When assessing Arroyo's time records, Volvo excludes full months because Arroyo is absent from work because of A&S, FMLA and Military Leave and disciplines her by going back, reviewing and measuring almost a full year of her time records. (Doc. #77-6, pp. 1-3; Doc. #77-6, pp. 77-78). Because Arroyo is the only employee subject to Military Orders, she is the only

employee who can be disciplined for a longer time period than is required under policy.

### F. Arroyo Complaining of Violation of Her Rights And Seeking the Assistance of ESGR Throughout Her Employment at Volvo

Volvo contends that "Arroyo complained — *for the first time* — via email to Williams on May 20, 2011, that she felt discriminated against under the ADA."[23] (Italics in original). That is a ridiculous assertion! Arroyo is complaining to Volvo Management and ESGR of discrimination under both the ADA and USERRA long before she sends the email to Williams on May 20, 2011.

In 2005, Arroyo first turns to ESGR to mediate the issue of adequate travel and rest time to and from her military training as required under USERRA. Volvo acknowledges that ESGR mediated this issue and a resolution is reached. (Doc. 78-3, p. 36).

On December 2, 2010 Arroyo delivers the results of her research on the ESGR website concerning accommodations recommended by the Department of Labor for employees in the military to Sherrie Jankowski, her supervisor. (Doc. #78-5, p. 17; Doc. #78-2, p. 7).

On December 19, 2010 Arroyo attends a Yellow Ribbon Event in Denver, Colorado where she receives documents, all of which she shares with Volvo Management. (Doc. #78-2, p. 8).

---

[23] Appellee's Brief, p. 13.

On December 30, 2010, Arroyo emails Colonel Gorski of ESGR complaining that she is "being targeted and attacked" by Mr. Schroeder as she seeks the benefits to which she believes she is entitled:

> …I want to work. I want to be paid for the work that I do. I do not want to be abused. I do not want to be punished for exercising my rights. And I want the benefits and entitlements provided for me by law/the company. And I have called you, Mr. Gorski, because I am tired of fighting. I do not wish to speak to Mr. Schroeder any more.

(Doc. 78-5, pp. 53-54).

## 1. Schroeder Denies Arroyo the Flexible Work Schedule That Would Have Cost Volvo Nothing

Volvo's reference to a "flexible schedule that would allow an employee to clock in at whatever time she wanted and make up time at end of shift was not reasonable accommodation"[24] is completely inappropriate in the circumstances of this case and quite insulting. The record never indicates that Arroyo asked that she be allowed to "clock in at whatever time she wanted". Schroeder would never acquiesce to such a request. Schroeder runs a despotically tight ship. Arroyo is fearful of him and would never dare to broach such a suggestion.

Even more importantly, Volvo describes its companywide Flexible Work Arrangements Policy as allowing an "employee to work with his or her supervisor to set the workday, starting and ending time that may differ from others in the department." (Doc. #79, PSOF 25).

---

[24] Appellee's Brief, p. 50.

Arroyo's request for the Companywide Flexible Work Schedule might have been "still under review" with Human Resources in North Carolina, but in the meanwhile back at the Chicago plant, Schroeder and Temko busily assess "occurrences" to justify their termination of Arroyo.   During the final week of Arroyo's employment, Volvo's own time records show she electronically punches into work 30 minutes early to use the meditation room.  Arroyo is marked "Tardy" only after "management observes her" walking to her workstation. (Doc. #77-6, pp. 1-2).

Volvo's time records show that Arroyo checks in well before starting time. (Doc. # 77-6, p.74).  However, without review of the company time punch records management members use their own wristwatch to determine Arroyo's tardiness in walking to her workstation. Of course, the time clock in the warehouse and management's own wrist watches are often not synchronized and do not agree. (Doc. #82-3, p. 29 [Schroeder Dep. p.108:9-23)

## 2. Schroeder Claims He Terminated Arroyo For Violation of Volvo's Attendance Policy And For No Other Reason

Volvo claims that "Arroyo fails to address this spot-on authority, instead oddly listing reasons for which she was not fired, while at the same time conceding that she was terminated under the attendance policy."[25]  Arroyo concedes nothing of the kind.

Arroyo points out that Schroeder and Temko both acknowledge that Arroyo always met the reasonable expectations of the company. (Doc. #79, p. 6, ¶23).

---

[25] Appellee's Brief, p. 37.

Schroeder acknowledges that she was not terminated for insubordination. (Doc. #79, p. 6, ¶24). The only reason for Arroyo's termination according to Schroeder, the decision-maker was "she had violated Volvo Truck Parts Absenteeism Attendance Policy and the Start of Shift Rule" (Doc. #79, p. 9, ¶35).

Arroyo contends that, under the facts in this case, Schroeder's stated reason for terminating her for walking to her workstation 1 to 3 minutes late after having checked into the facility 30 minutes early to use the meditation room to relieve PTSD symptoms before starting work as agreed is unbelievable, unpersuasive, and pretextual.

## IV. USERRA Is Not a Fee Shifting Statute and There Is No Subject Matter Jurisdiction to Award Costs

Contrary to the assertions of Volvo[26], USERRA is not a fee shifting statute and the Court below erred in assessing costs against Arroyo. USERRA has not granted statutory authority for the trial court to award costs and expenses. Subject matter jurisdiction to do so cannot be conferred by agreement. *Scaccianoce v. Hixon Mfg. & Supply Co.*, 57 F.3d 582, 585 (7th Cir.1995). Nor can parties waive subject matter jurisdiction. *Levin v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Ill.*, 74 F.3d 763, 766 (7th Cir.1996). Volvo's observation that Arroyo "failed to raise this objection to the District Court – in spite of an order explicitly granting her time to do so" is unavailing. Lack of subject matter jurisdiction can be raised at any time. *Insurance Corp. of Ireland, Ltd.*, 456 U.S.

---

[26] Appellee's Brief, p.3, n2.

694. 702, 102 S.Ct. 2099, 2104 (1982); *Levin*, 74 F.3d at 766. The District Court's decision to award fees and costs is reviewed *de novo*. for an abuse of discretion. See *Lott v. Pfizer, Inc.*, 492 F.3d 789, 792 (7th Cir.2007) and *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 365 (7th Cir.2000).

## V. CONCLUSION

Making all inferences in favor of Arroyo, there are genuine factual issues that properly should be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. The orders entered granting summary judgment to Volvo and assessing costs against Arroyo should be reversed. The matter should be returned to the court below for trial before a jury.

April 13, 2015                                        Respectfully submitted,

                                                     /S/John P. DeRose
                                                     Attorney for LuzMaria Arroyo,
                                                     Plaintiff–Appellant

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com

## CIRCUIT RULE 30(d) STATEMENT

In accordance with Circuit Rule 30(d) of the Rules of the Seventh Circuit Court of Appeals, I certify that the foregoing brief contains all the materials required by parts (a) and (b) of this Rule.

                                                     /s/John P. DeRose
                                                     John P. DeRose

27

Attorney for LuzMaria Arroyo,
Plaintiff–Appellant

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 28.1(e)(1)-(3) and Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I certify that the foregoing brief complies with the type volume limitation and is proportionately spaced as required by Rule 32(b) of the Circuit Rules. The brief exclusive of tables and cover page contains 6,961 words as recorded by the word count of the word- processing system used to prepare the brief.

/s/John P. DeRose
John P. DeRose
Attorney for LuzMaria Arroyo,
Plaintiff–Appellant

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com

# CERTIFICATE OF SERVICE

To:    Mr. William J. McMahon IV        Ms. Falon M. Wrigley
        100 N. Cherry Street              Constangy, Brooks & Smith, LLP
        Suite 300                        Suite 1325
        Winston-Salem, NC 27101       7733 Forsyth Blvd.
        bmcmahon@constangy.com        St. Louis, MO 63105
                                      fwrigley@constangy.com

The undersigned, pursuant to 28 USC 1746, certifies under penalty of perjury under the laws of the United States of America that this REPLY BRIEF OF PLAINTIFF-APPELLANT was served by electronically filing the same with the Clerk of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system on April 13, 2015. The participants on this appeal are registered CM/ECF users and will be served by the CM/ECF system. I further certify that I also served the participants by placing two copies of this REPLY BRIEF OF PLAINTIFF-APPELLANT in an envelope with sufficient postage affixed and directed to the participants named above, at the addresses indicated, and depositing the envelopes in the United States mail on April 13, 2015.

                                     /s/ John P. DeRose
                                     John P. DeRose
                                     Attorney for LuzMaria Arroyo
                                     Plaintiff-Appellant

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com